RAPHAEL M. SKILTON, as Surviving Partner of the Firm of T. J. & R. M. SKILTON, Respondent, *v.* CHARLES S. CODINGTON, as Trustee in Bankruptcy of WILLIAM J. BARRON, Appellant, Impleaded with Another.

1. BANKRUPTCY — JURISDICTION OF SUPREME COURT TO HEAR AND DETERMINE ACTION AGAINST TRUSTEE IN BANKRUPTCY TO ENFORCE CHATTEL MORTGAGE GIVEN BY BANKRUPT. Where a trustee in bankruptcy, under an order of the bankruptcy court, retains out of the proceeds of the sale of the bankrupt's property a certain sum for the benefit of any liens or claims that might be established against the property, the Supreme Court of this state has jurisdiction to hear and determine an action brought against such trustee to enforce a chattel mortgage executed by the bankrupt and recover the amount due on a note which the mortgage was given to secure, if the bankruptcy court does not enjoin the prosecution of such action and permits the creditor to assert his claim by a plenary suit in a court of general jurisdiction.

2. CHATTEL MORTGAGE — RIGHTS OF CREDITORS WHOSE CLAIMS ACCRUED BEFORE FILING OF A CHATTEL MORTGAGE — TRUSTEE IN BANKRUPTCY. A chattel mortgage, unfiled for a term of five years, is void as against creditors of the mortgagor whose claims accrued prior to such filing; and although creditors cannot, under the general rule, attack it until after the recovery of a judgment and issue of an execution, this rule is simply one of procedure and does not affect the right; and, therefore, where the recovery of a judgment is impracticable it is not an indispensable requisite to enforcing the rights of the creditor; hence, a trustee in bankruptcy may, for the benefit of creditors, attack such mortgage, though if a creditor seeks that relief in his own name it would be necessary that his claim be first put in judgment.

3. SAME — WHEN CHATTEL MORTGAGE VALID BETWEEN PARTIES MAY BE ATTACKED BY TRUSTEE IN BANKRUPTCY — BANKRUPTCY LAW, § 67. Notwithstanding the fact that an unfiled chattel mortgage is valid as

between the parties and that a trustee in bankruptcy succeeds only to the rights of his bankrupt, he is not thereby precluded from attacking a mortgage made by his bankrupt for default in filing, since by section 67 of the Bankruptcy Act it is expressly provided that " claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

4. SAME — PROVISIONS IN CHATTEL MORTGAGE RELATING TO SALE OF MORTGAGED PROPERTY — WHEN MORTGAGE FRAUDULENT AS MATTER OF LAW AND VOID AS AGAINST CREDITORS BY REASON OF SUCH PROVISIONS. While permission given the mortgagor to sell mortgaged chattels, the proceeds thereof to be applied in payment of the mortgage, does not render a chattel mortgage void, because in such case the proceeds of the sales must be treated as reducing the amount due on the mortgage, even though the mortgagor should misapply them or refuse to pay them to the mortgagee, yet a chattel mortgage which expressly provides that the mortgagor may sell and dispose of the mortgaged property and apply the proceeds to the payment of the debt, " excepting such portion thereof as is necessary for the expenses of the business or as he  *  *  *  may need to replenish or increase the said stock of goods," is fraudulent as a matter of law and void as against creditors; since the mortgage does not require all the proceeds of the mortgaged chattels to be applied either on the mortgaged debt or to the acquisition of new property, but only the surplus after deducting the expenses of carrying on the business ; in effect it is an agreement that the mortgagor might conduct the business as if the mortgaged property was his own, selling and buying goods at his pleasure, and if at any time he should be unsuccessful and be pressed by creditors then the whole stock should be subject to the lien of the mortgage even against creditors from whom new goods might have been purchased.

*Skilton* v. *Codington,* 105 App. Div. 617, reversed.

(Argued March 30, 1906; decided April 24, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 11, 1905, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Myron D. Short* for appellant.    The Supreme Court has no jurisdiction of the subject-matter of this action.   ( *White* v. *Schloerb,* 178 U. S. 542 ; *Matter of Rockford,* 10 Am. Bank. Reg. 608 ; *Matter of Kellogg,* 7 Am. Bank. Reg. 623 ; *Mat-*

ter of *A. S. D. Co.*, 10 Am. Bank. Reg. 350; *Bardes* v.
*Hawarden Bank*, 178 U. S. 524; *Bryan* v. *Bernheimer*, 181
U. S. 188.)   The agreement of lien was void as against the
receiver appointed by the United States District Court at the
instance of the bankrupt's creditors.   (*Matter of Rogers*, 11
Am. Bank. Reg. 93 ; *Matter of Pekin Plow Co.*, 50 C. C.
A. 257 ; *Matter of Smith & Shuck*, 13 Am. Bank. Reg. 103 ;
*Gove* v. *Martin Trust Co.*, 96 App. Div. 177 ; *Mueller* v.
*Nugent*, 184 U. S. 1 ; *Matter of Beebe*, 11 Am. Bank. Reg.
387 ; *Southard* v. *Benner*, 72 N. Y. 424 ; *Thompson* v. *Van
Vechten*, 27 N. Y. 568 ; *Karst* v. *Gane*, 136 N. Y. 316 ;
*Jones* v. *Graham*, 77 N. Y. 628 ; *Button* v. *Rathbone*, 126
N. Y. 187.)   The agreement of lien was fraudulent in fact as
to creditors, and so void as to the defendant trustee.   (*South-
ard* v. *Benner*, 72 N. Y. 424 ; *Reynolds* v. *Ellis*, 103 N. Y.
115 ; *Edgell* v. *Hart*, 9 N. Y. 213 ; *Brackett* v. *Harvey*, 91
N. Y. 214 ; *Mandeville* v. *Avery*, 124 N. Y. 376 ; *Griswold*
v. *Sheldon*, 4 N. Y. 594 ; *Potts* v. *Hart*, 99 N. Y. 168 ;
*Stimson* v. *Wrigley*, 86 N. Y. 332 ; L. 1858, ch. 314 ; *Harvey*
v. *McDonnell*, 113 N. Y. 530 ; *Ford* v. *William*, 24 N. Y.
359.)

*George L. Bachman* for respondent.   A creditor loses the
right to avail himself of the failure of the chattel mortgagee
to file his mortgage by failing to proceed to obtain a lien on
the property by the levy of an execution or otherwise, and
when such a lien is not acquired until after an assignment for
creditors has been made by the mortgagor he loses the right to
acquire such lien by levy.   (*Kitchen* v. *Lowery*, 127 N. Y. 53 ;
*Sutherland* v. *Miller*, 106 N. Y. 635 ; *Stevens* v. *M. B. Co.*,
160 N. Y. 178 ; *Shelden* v. *Wickham*, 161 N. Y. 503 ; *Tre-
maine* v. *Mortimer*, 128 N. Y. 10 ; *Crisfield* v. *Bogardus*, 18
Abb. [N. C.] 334 ; *Yeatman* v. *Savings Inst.*, 95 U. S. 764 ;
*Stewart* v. *Platt*, 101 U. S. 731 ; *Hauselt* v. *Harrison*, 105 U. S.
401 ; *Button* v. *Rathbone, Sard & Co.*, 126 N. Y. 187.)   The
trustee takes, not as an innocent purchaser, but subject to all
valid claims, liens and equities, and he has no better title

than the bankrupt had. (Collier on Bankruptcy [4th ed.], 509; *C. Nat. Bank* v. *R. I. Co.*, 4 Am. Bank. Reg. 441; *Matter of N. Y. E. P. Co.*, 6 Am. Bank. Reg. 615; *Hewit* v. *B. M. Co.*, 194 U. S. 296; *D. S. Co.* v. *Spencer*, 112 Fed. Rep. 638; *Yeatman* v. *Savings Inst.*, 95 U. S. 764; *Stewart* v. *Platt*, 101 U. S. 731; *Skilton* v. *Codington*, 86 App. Div. 171; *Shelden* v. *Wickham*, 161 N. Y. 500; *Matter of Wright*, 2 Am. Bank. Reg. 364; *Matter of Collins*, 12 Blatchf. 552.) Under the provisions of the Bankruptcy Act of 1898 the state courts have jurisdiction over cases wherein the trustee in bankruptcy and third parties contest the right to property. (*Bards* v. *F. Nat. Bank*, 178 U. S. 524; *Jones* v. *Schemerhorn*, 53 App. Div. 494; *Eyster* v. *Gaff*, 91 U. S. 403; *Mitchell* v. *McClure*, 178 U. S. 539; *Hicks* v. *Knost*, 178 U. S. 541; *Wall* v. *Cox*, 181 U. S. 244; *Stern* v. *Mayer*, 99 App. Div. 427.)

CULLEN, Ch. J. This action was brought to enforce a chattel mortgage executed on October 4th, 1897, by William J. Barron to the plaintiff and his deceased partner. On that day the plaintiff's firm sold to Barron all the stock and fixtures of a plumbing and roofing establishment, in the city of Geneva, for the sum of six thousand dollars. Part of the purchase money was represented by a note executed by the vendee to the vendors for the sum of twenty-five hundred dollars to be paid five years from date with interest payable semi-annually. To secure that note it was provided that the vendors should have a lien upon all the goods, wares, merchandise and chattels so sold and upon all other personal property, goods and merchandise which might be used or put on the premises by the vendee, such lien in case of default in payment to be enforced in the same manner as in the case of a chattel mortgage. It was agreed that the vendee, his executors or assigns " may sell and dispose of said property and apply the proceeds of such sale to the payment of the debt hereby secured," and the vendee covenanted for himself and his assigns " that as said stock is sold and disposed of by him or them, he or they

will apply the proceeds to the payment of such debt, except-
ing such portion thereof as is necessary for the expenses of
the business or as he or they may need to replenish or increase
the said stock of goods, wares and merchandise, it being under-
stood and agreed that in such case the substituted stock shall
take the place and be instead of the stock so sold, and it being
also understood and agreed that no part of said stock or of the
proceeds of such sales shall be used or disposed of by" the
vendee or his assigns, "except as hereinbefore set forth."
The vendee further covenanted that he would keep the said
stock "replenished, renewed and of a value at least equal to
its then value." This agreement was first filed on October 2d,
1902, in the office of the clerk of the city of Geneva. On
November 7th the plaintiff demanded the possession of the
goods and chattels mentioned in said agreement or chattel
mortgage, which was refused. On November 25th, 1902,
Barron, the vendee, was adjudicated a bankrupt. The defend-
ant, as trustee in bankruptcy, under an order of the bankrupt
court which directed that out of the proceeds of the sale the
sum of twenty-six hundred dollars be reserved by the trustee
for the benefit of any liens or claims that might be established
on the property, sold the stock and fixtures of the bankrupt
and out of the proceeds held on deposit the amount prescribed
by the order. Theupon the plaintiff brought this action in
the Supreme Court to recover the amount due him on the note
and mortgage. The foregoing facts appear in the findings of
the learned trial court, which awarded judgment for the plain-
tiff. That judgment was affirmed by the Appellate Division,
and from that affirmance an appeal is now taken to this court.

The first contention of the appellant is that the state court
had no jurisdiction of the cause of action, because the fund
was in the possession of the bankrupt court. We think it had
jurisdiction of an action to determine and establish the plain-
tiff's lien. It is settled by the decision of the Supreme Court
of the United States in *Bardes* v. *Hawarden Bank* (178 U. S.
524), that the bankrupt court, except by the consent of the
parties, has not jurisdiction to try and determine a suit brought

by a trustee in bankruptcy to recover property alleged to be part of the bankrupt's estate, or to have been transferred by him in fraud of the act, but that such suits must be prosecuted either in the state courts or in the Circuit Court of the United States, if the citizenship of the parties authorizes the action to be maintained in the latter tribunal. (See, also, *First Nat. Bank of Chicago* v. *Chicago Title & Trust Co.*, 198 U. S. 280.) While it is not so certain that that rule obtains in its full integrity as to a suit brought against trustees in bankruptcy, we think it was the intention of the Bankrupt Act to allow adverse claimants to property or parties claiming liens to establish their rights by suits in courts of plenary jurisdiction and not to subject such claims to summary disposition in the bankrupt court, unless it may be when the claims are frivolous or made in bad faith. In *Eyster* v. *Gaff* (91 U. S. 521) it was said: " The opinion seems to have been quite prevalent in many quarters at one time, that, the moment a man is declared a bankrupt, the District Court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance, and it was a prevalent practice to bring any person, who contested with the assignee any matter growing out of disputed rights of property or of contracts, into the bankrupt court by the service of a rule to show cause, and dispose of their rights in a summary way. This court has steadily set its face against this view. The debtor of a bankrupt or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions." This statement is quoted with approval by Judge GRAY in *Bardes* v. *Hawarden Bank* (*supra*). Of course, we do not mean to assert that under the judgment of the state court

the fund or property could. be taken from the possession of the bankruptcy court; the contrary is the law.  It may also be that the bankrupt court could have enjoined the prosecution of this action, but it has not done so.  Apparently, it has invited the plaintiff to assert his claim by a plenary suit in a court of general jurisdiction, and we may assume that the bankrupt court will give effect to any judgment recovered therein.

On the merits of the controversy, however, we are of opinion that the judgments below were erroneous.  By reason of the failure to file the chattel mortgage for five years, that mortgage was void as against creditors whose claims accrued prior to such filing.  (Lien Law, § 90, chap. 418, Laws of 1897; *Thompson* v. *Van Vechten,* 27 N. Y. 568.)  "A creditor by simple contract is within the protection of the statute as much as a creditor by judgment, but until he has a judgment and a lien, or a right to a lien upon the specific property, he is not in a condition to assert his rights by action as a creditor."  (*Southard* v. *Benner,* 72 N. Y. 424; *Karst* v. *Gane,* 136 N. Y. 316.)  In *Stephens* v. *Perrine* (143 N. Y. 476) the mortgagee had obtained possession of the mortgaged property and sold the same prior to the recovery of a judgment by the creditor.  Nevertheless, the mortgagee was held liable to account to the creditor for the amount realized from the sale of the property.  It was there said by Judge Peckham: "The mortgage, as to the creditors of the mortgagor, was always void.  * * *  The action is against the mortgagee, and I cannot see the force of the reasoning which, while admitting that the mortgage is void as to creditors, nevertheless asserts that a title to the property covered by it may be obtained by the mortgagee by proceedings taken under it, and which asserts the validity of such instrument, provided they are taken before the creditors are armed with a judgment and execution so as to enforce their rights which rest upon the invalidity of the mortgage."  This decision seems to me controlling on the point we are now considering.  It is true there is to be found in some cases a statement that the mortgage is void only as to judgment creditors.  This statement, if con-

strued in the light of the circumstances of the case before the court and with reference to the context of the opinion, is substantially correct, though not strictly accurate as a general proposition. The question is quite similar to that of the right of an attaching creditor to seize goods fraudulently transferred by his debtor. That he has such right is settled by authority. (*Rinchey* v. *Stryker*, 28 N. Y. 45; *Frost* v. *Mott*, 34 N. Y. 253; *Hess* v. *Hess*, 117 N. Y. 306.) In the first of these cases the same argument was made as is now presented, that the transfer was void only as to judgment creditors, and numerous dicta of eminent judges were quoted in support of that position. This court held that all that was meant by the expression was that a creditor could not attack the fraudulent transfer until he had obtained some process which authorized the seizure of the debtor's property. That is the true interpretation of the dicta relating to unfiled chattel mortgages. The rule that a creditor must first recover a judgment is simply one of procedure and does not affect the right. Therefore, where the recovery of a judgment becomes impracticable it is not an indispensable requisite to enforcing the rights of the creditor. So it was held that an assignee in bankruptcy could, for the benefit of creditors, attack a fraudulent mortgage, though if a creditor had sought that relief in his own name it would be necessary that his claim be first put in judgment. (*Southard* v. *Benner, supra.*) Even where a statute, which secures to creditors liability of stockholders, provides in express terms for the recovery of a judgment and return of execution against the corporation, judgment and execution are unnecessary where they have become impracticable on account of the dissolution of the corporation or of an injunction restraining the prosecution of suits against it. (*Hardman* v. *Sage*, 124 N. Y. 32; *Hunting* v. *Blun*, 143 N. Y. 511; *Lang* v. *Lutz*, 180 N. Y. 254.) It is urged by the respondent that the unfiled mortgage was valid as between the parties and that the trustee in bankruptcy succeeds only to the rights of the bankrupt and, hence, cannot attack the mortgage for default in filing. This was the law under the

Bankrupt Act of 1868. (*Stewart* v. *Platt*, 101 U. S. 731.) But by section 67 of the present Bankrupt Act it is expressly provided that " claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate," a provision which was not found in the earlier statute. This seems to cover the case. The respondent, however, relies on two cases in the Federal courts as authority to the contrary (*Hewit* v. *Berlin Machine Works*, 194 U. S. 286, and *In re New York Economical Printing Co.*, 49 U. S. C. C. A. 133). The case in the Supreme Court is not in point. That arose under section 112 of the Lien Law which provides that reservations of title in contracts for the conditional sale of goods and chattels unless filed as directed by the statute shall be void as against subsequent purchasers, pledgees or. mortgagees in good faith. But there is no provision that it shall be void as against creditors. This is the vital distinction between the law applicable to such contracts and that pre-scribed as to chattel mortgages. The court held that the trustee in bankruptcy was not a purchaser in good faith from the mortgagor and, hence, could not attack the contract, but observed in conclusion : " We concur in this view which is sustained by decisions under previous bankruptcy laws and is not shaken by a different result in cases arising in states by whose laws conditional sales are void as against creditors." The case in the Circuit Court of Appeals is in point, and it was there held that a trustee in bankruptcy could not attack a chattel mortgage for default in filing. As appears by the opinion the result was reached on the assumption that by the law of the state of New York a non-filed chattel mortgage was void only as to judgment creditors obtaining a lien, not as to general creditors. We think the very eminent judge who wrote in the case misconceived the law of the state in this respect. If it were a Federal question we would follow the decision regardless of our own opinion, but as the question is as to the law of this state we must adhere to the prior decisions of this court. It is to be further observed that in a.

subsequent case in the Circuit Court (*In re Kellogg*, 118 Fed. Rep. 1017), which arose under the conditional sale statute, the decision was placed on the ground that the statute did not render such contracts void as against creditors, and it was pointed out that decisions in states where such sales are void as against creditors were not in conflict with the decision.   In the case before us it appears that almost all the debts of the bankrupt were incurred prior to the filing of the mortgage.

Since the foregoing was written the Supreme Court of the United States has decided the case of *York Manufacturing Co.* v. *Cassell* (201 U. S. 344), in which it was held, reversing the decision of the United States Circuit Court of Appeals of the sixth circuit, that under the laws of the state of Ohio an assignee in bankruptcy takes the property of the bankrupt subject to the lien of an unfiled contract of conditional sale, which in that state is void as against creditors as well as against subsequent purchasers.    I understand by the opinion there delivered by Mr. Justice PECKHAM that the decision proceeds on the ground that under the state law as construed by the courts of the state in reference to.chattel mortgages (*Wilson* v. *Leslie*, 20 Ohio, 161) a conditional contract is void only as against those creditors who, before the contract or mortgage is filed or before the vendor or mortgagee obtains possession, seize the property on execution or attachment.    This, as shown in the opinion delivered by Judge PECKHAM in the case of *Stephens* v. *Perrine*, already cited, is not the law of this state.    With us the.mortgage .is void as to simple contract creditors, but such creditors cannot attack it until the recovery of a judgment and issue of execution.    Then they can seize the mortgaged property whether the mortgagee has filed his mortgage or taken possession ; though otherwise if the mortgagor has by subsequent action made a valid alienation.    This principle has recently been re-asserted by the court in *Russell* v. *St. Mart* (180 N. Y. 355).

Though the trial court found that the mortgage was made in good faith we are of opinion that by reason of its pro- visions it was fraudulent as a matter of law and void as

against creditors.   A chattel mortgage otherwise valid is not
rendered void because it professes to include property that
may be subsequently acquired.   (*Gardner* v. *McEwen*, 19
N. Y. 123.)   Nor does permission given the mortgagor to
sell the mortgaged chattels, the proceeds thereof to be
applied in payment of the mortgage, render the mortgage
void, because in such case the proceeds of the sales must
be treated as reducing the amount due on the mortgage,
even though the mortgagor should misapply them or refuse
to pay them to the mortgagee.   (*Conkling* v. *Shelley*, 28
N. Y. 360.)   But an agreement between the parties by
which the mortgagor was to carry on a retail store, making
purchases from time to time and selling off in the ordinary
manner, the mortgagee all the time retaining a lien on the
whole stock by way of mortgage under which he could, upon
default, take possession of the remaining goods and sell them
for the payment of his debt, was held void as against credit-
ors.   (*Edgell* v. *Hart*, 9 N. Y. 213.)   This last case may be
somewhat limited by the subsequent decision in *Brackett* v.
*Harvey* (91 N. Y. 214), but nevertheless it is unquestionably
the law that where there is an agreement that the mortgagor
may sell for his own benefit the mortgage is fraudulent as a
matter of law.   (*Southard* v. *Benner*, *supra ; Potts* v.
*Hart*, 99 N. Y. 168; *Hangen* v. *Hachemeister*, 114 id. 566;
*Mandeville* v. *Avery*, 124 id. 376.)   The instrument under
which the plaintiff claims his lien expressly provided that the
mortgagor might sell and dispose of the property and apply
the proceeds to the payment of the debt, "excepting such
portion thereof as is necessary for the expenses of the business
or as he or they may need to replenish or increase the said
stock of goods."   The plaintiff contends that under the
authority of the *Brackett* case the agreement that the plain-
tiff should apply the proceeds of the sales of the mortgaged
chattels to the purchase of other goods did not render the
mortgage void.   I do not think the decision goes to that
extent.   The agreement in that case was a peculiar one.
While it did provide for the application of the proceeds of

sales to new purchases, it also provided that new mortgages should be given from time to time on the chattels subsequently purchased. Such new mortgages were in fact given, and it was the validity of these later mortgages that was impeached in the suit then before the court. As was pointed out in the opinion, when these mortgages were given the mortgagee was a creditor of the mortgagor, whatever may have been the misapplication of the proceeds of sales under the earlier mortgages, and the parties had the right to contract on the then existing status, because there was no creditor in a position to question the validity of the contract. In the course of the discussion it was said that it was perhaps a just inference from the contract between the parties that the mortgagor might sell and apply the proceeds towards new purchases on condition that the substituted property should be brought in and subjected to the mortgage; that this did not injuriously affect the rights of creditors, as the substituted property would represent the property sold and that, therefore, it was not necessary to hold the agreement fraudulent. This statement was not necessary to the disposition of the cause, and I am frank to say that I should be loath to accede to it in its entirety. The substituted property might or might not equal in value the property realized from the lien of the mortgage by sale. Even in the most favorable view it would give the mortgagor unlimited power of speculation in the disposition of the mortgaged property. The property might be wasted by ill-judged speculation, even though the mortgagor acted in good faith. However this may be, the agreement now before us goes a step further than that in the *Brackett* case. It does not require all the proceeds of the mortgaged chattels to be applied either on the mortgage debt or to the acquisition of new property, but only the surplus after deducting the expenses of carrying on the business. We need not consider whether the expenses of the business which the mortgagor was authorized to deduct from the sales would include compensation for his own services or not. Plainly they would comprehend rent, clerk hire and similar

items. Of such a provision contained in the agreement it is idle to argue that if the mortgagor acted honestly and lived up to his agreement the property newly acquired would be the equivalent of that disposed of by sale. On the contrary, it is not only possible, but, if the business proved unsuccessful, probable that a large part of the mortgaged property would be sold without the proceeds being applied either to the reduction of the debt or to new property substituted for that disposed of. The purpose and intent of the agreement between the parties is plain on its face. The mortgagor was to conduct the business for the term of five years in the same manner as if he was the absolute owner of the stock in trade, selling and buying stock at his pleasure and discretion and paying the expenses of the business out of the sales, while if at any time he should be unsuccessful and be pressed by his creditors, the whole stock was to be subject to the lien of the mortgage as against the creditors from whom the very goods might have been purchased. No case in this state has gone to the extent of upholding such an agreement, and in our opinion it is fraudulent and void as a matter of law.

The judgment should be reversed and complaint dismissed, with costs in all courts.

GRAY, EDWARD T. BARTLETT, WERNER and CHASE, JJ., concur; O'BRIEN, J., absent; HISCOCK, J., not sitting.

Judgment reversed, etc.