## In re LIBERTY SILK CO.

### (District Court, S. D. New York. April 23, 1907.)

**LIENS—EQUITABLE LIENS—RAW MATERIAL SOLD FOR MANUFACTURE.**

Petitioners who were foreign commission merchants purchased certain silk filatures for the bankrupt for manufacture into silk. The contract provided that the goods were to be taken by the buyer on arrival, and that the buyer should receive an allowance should sea water damage exceed 5 per cent. The brokers were also excused from accidents of the seas and other specified unavoidable casualties, and were given a prior lien on the goods covered by the order or an equivalent value, until payment had been made. The filatures were delivered to the bankrupt, with the intention that the same should be made up and on a credit of 90 days, with a discount of 1½ per cent. or net six months note. *Held*, that such facts did not create an equitable lien on the goods in favor of the brokers as against the bankrupt's other creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Liens, §§ 26–28.]

S. S. Terry (Julius Henry Cohen, of counsel), for the motion.
Thomas & Oppenheimer and James N. Rosenberg, opposed.

HOUGH, District Judge. The bankrupt was engaged in the manufacture of silk; and one of the raw materials of such manufacturing business was "Japanese filatures," meaning threads of silk reeled off from the cocoon and imported from Japan.

Peabody & Co. are "foreign commission merchants," acting for whomsoever employs them as "buyers and agents throughout the world." On August 25, 1905, the bankrupt ordered Peabody & Co., in writing, to buy 27 bales of filatures to be shipped from Japan. The order produced is in effect a contract for the purchase of the merchandise specified, and provides specifically "silk to be taken by buyer upon arrival of goods," and that "buyers" are to receive an "allowance" should sea water damage exceed 5 per cent.; excuses Peabody & Co. from "accidents of the seas" and other specified "unavoidable casualties," and also declares that Peabody & Co. "are hereby given a prior lien upon the goods covered by this order, or an equivalent value, until payment has been made." On September 18, 1905, the goods were invoiced or billed to the bankrupt, the invoice stating the terms of payment (as did the order) "1½% 90 days or net 6 months note"; and also stating that "H. W. P. & Co. retain a prior lien upon the under-noted goods until payment has been made." On or about the same date the consignment was physically delivered to the bankrupt. There is no evidence as to any further course of dealing between the parties, nothing shown as to the frequency of similar transactions between them, and the court is left in entire ignorance of the method or methods of contract fulfillment actually pursued.

On the facts above stipulated or apparent from the bankruptcy record, the court is asked to declare a lien in favor of Peabody & Co. upon such of the filatures as passed into the possession of the trustee by adjudication following petition filed on January 4, 1906, or, in the alternative, to adjudge that at such time Peabody & Co. were owners

of such filatures, and therefore entitled to their immediate possession. This absence of evidence upon points obviously capable of elucidation, and possibly important in ascertaining the true intent of the parties, is not approved. Cases stated are always in danger of presenting academic questions only, and this stipulation is very near the line. From the few facts shown, however, I draw the inference that, upon the delivery of the filatures to the bankrupt, Peabody & Co. knew or were bound to know that they were to be used in a manufacturing business; were to be consumed in the sense that all raw material is consumed; and might in their changed shape be sold when and upon such terms as the bankrupt elected, and that with this knowledge Peabody & Co. made their bargain, delivered the goods, and thereafter exercised no control whatever over the bankrupt's proceedings. It is also either inferable or stipulated that no agreement was made as to the application of the sale price of either the raw material or the manufactured product to the reduction of Peabody & Co.'s claim. The contract above referred to was not filed in accordance with the law of this state either as a conditional sale or a chattel mortgage; and no explanation is given by the evidence or suggested at bar of the meaning of the words (contained in the contract or order) "or an equivalent value." The transaction above set forth cannot constitute a conditional sale. A seller cannot at the same time retain title to that which he sells and a lien on the article sold. A lien in favor of A., whether it be regarded as jus in re or jus ad rem, presupposes title in another, and A.'s acquirement of title extinguishes his lien.

The transaction in question somewhat resembles that shown in Gregory v. Morris, 96 U. S. 619, 24 L. Ed. 740. It undoubtedly sought to create a charge upon the property, and here, as in the case cited, the charge or lien must be regarded as of the nature of a mortgage, if any analogy can be found in ordinary legal terminology. It is admitted that regarded as a mortgage the lien asserted is void as against the trustee in bankruptcy under the law of New York, by Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, inasmuch as the instrument creating the lien was not filed in accordance with law. It is also admitted that, could the transaction be regarded as a conditional sale, it is valid under the law of the same state as interpreted in Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. But, under the authority of the same decision, it is asserted that, inasmuch as the trustee has no better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues, the contract of August 25, 1905, should be regarded as conferring an equitable lien—a something which is neither a mortgage nor a conditional sale, but a partial reservation of interest on the part of a vendor, not obnoxious to any law of the state of New York, and within the equity of the bankruptcy act as interpreted in the case last cited. It must be admitted that no actual fraud is shown or suspected in this transaction, and that the courts of this state have gone far in upholding the validity of hypothecations of personal property even where the goods hypothecated were to be turned into money by the mortgagor, bailee, or conditional vendee, provided

it was also agreed that the proceeds of such sale or use were to be applied in diminution of the debt secured by the goods themselves. Prentiss Tool, etc., Co. v. Schirmer, 136 N. Y. 304, 32 N. E. 849, 32 Am. St. Rep. 737. But I am not aware that it has been doubted since Southard v. Benner, 72 N. Y. 424, that a right existing in a chattel mortgagor to sell the mortgaged property and use the proceeds thereof generally in his own business is (however honest in intent) a fraud upon the law. The wholesome rule is summarily stated in Re Garcewich, 8 Am. Bankr. Rep. 149, 115 Fed. 87, 53 C. C. A. 510, that when property is delivered to a vendee for consumption or sale, or to be dealt with in any way inconsistent with the ownership of the seller, the transaction cannot be upheld as a conditional sale and is a fraud upon the creditors of the vendee. That rule in my judgment applies to this case. While I think as above indicated that the transaction is really a mortgage, and as such void for want of filing, yet it makes no difference whether it be denominated in one way or another, it still remains true that the filatures in question were delivered to the bankrupt with obvious intent that they should be used and consumed in the ordinary course of that bankrupt's business, and for the benefit thereof. Secret liens are to be discouraged, and where, even innocently, vendors seeking to create such liens permit so obvious a badge of fraud as here appears to exist in their contracts, they must take the legal consequences, and the matter is not bettered by a name. An equitable lien which involves a fraud upon the law is none the less obnoxious because so different in form from the better known mortgage or conditional sale as hardly to fall under either well-known category.

An order may be entered declaring that the applicants have no lien upon the goods in possession of the trustee.