In re SHIEBLER et al.

(District Court, E. D. New York. November 30, 1908.)

1. BANKRUPTCY (§ 328*)—CLAIMS—EFFECT OF SURRENDER OF PREFERENCE.

A claim against the estate of a bankrupt duly proved within the year allowed by Bankr. Act 1898, c. 541, § 57n, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3444), may be increased after the expiration of that time where made necessary by a requirement that the creditor shall return preferences received as a condition to its allowance.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 328.*]

2. BANKRUPTCY (§ 184*)—LIENS—VALIDITY—NONFILED CHATTEL MORTGAGES.

Under Laws N. Y. 1897, p. 536, c. 418, § 90, which as construed by the highest court of the state makes a chattel mortgage void as against general creditors unless filed as therein required, such a mortgage given by a bankrupt within four months prior to his bankruptcy, and when insolvent and known to be so by the creditor, and which was not filed until more than three months thereafter, is void as against the creditors in bankruptcy, either prior or subsequent, although it was taken for a present consideration and was valid when given.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 276; Dec. Dig. § 184.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. On report of special commissioner.

See, also, 163 Fed. 545.

Lewis Squires, for trustee.

Thompson, Vanderpoel & Freedman, for Charles W. Osborne.

CHATFIELD, District Judge. On August 22, 1907, the above-named bankrupts filed a voluntary petition in bankruptcy in this court, under which a receiver was appointed and ultimately a trustee elected. Certain property, comprising a stock in trade, was sold and certain book accounts collected, and the proceeds from these matters are now in the hands of the trustee. The machinery, tools, etc., in the factory of the bankrupts were also sold under stipulation by the trustee, and the proceeds of that sale held subject to a determination as to the validity of the chattel mortgage, which will be referred to later.

The bankrupts had for a number of years borrowed money from Charles W. Osborne, the brother-in-law of George W. Shiebler. Osborne is a reputable business man of New York City, whose integrity is not questioned. These loans amounted to a large sum of money, and were secured from time to time by the assignment of book accounts, from the sales of merchandise, and for a considerable period these loans were repaid. In August, 1906, the method of making these loans was changed, and a list of merchandise entered in the books of the firm as assigned to Osborne, such assignment being contained in a writing at the foot of the list of merchandise. It was also stated that the assignment was made as collateral to a note. This method of assignment was also extended, in the month of September, 1906, to cover the entire stock of merchandise then in the store, as collateral security for a note then made, but dated August 1, 1906. Subsequently, as sales of the merchandise were made and cash received, the sales and amount of cash were entered in the books, and from week to week the proceeds turned over to Osborne, until the 15th of August, 1907. At that time a number of credit sales were uncollected, and it is from these that the trustee has in part received the fund now in his hands. The trustee in bankruptcy has claimed not only that the funds in his hands (proceeds of the sale of the stock and these collections) are free from any lien or claim of title because of the assignment to Osborne, but also that the payments to Osborne from the sales of the merchandise above mentioned, within four months of the filing of the petition in bankruptcy, were preferential and must be repaid by him before any proof of claim can be presented on his behalf in the bankruptcy proceedings, under section 57g of the bankruptcy law. This matter was referred to the referee in bankruptcy as special commissioner, and he has made a report in which he finds that the assignments prior to August, 1906, while made in an unusual manner, were valid, and for a present consideration; that the assignment made in August, 1906, and the further note and assignment, or arrangement for collateral security, above mentioned, based upon the inventory taken in September, 1906, were invalid, this being conceded by the attorney for Osborne, and that any so-called assignments of accounts, as the goods contained in said inventory were sold

from time to time, were not for a present consideration, and in fact were not assignments at all. The referee has also found that Osborne knew of the financial condition of the bankrupts, and that, whether intentional or not, he must be legally held responsible for the reasonable effect of his knowledge of the bankrupt's condition, and, as a conclusion therefrom, that the payments to him within four months of the bankruptcy must be deemed preferential, especially in view of the fact that within those four months no further advances of cash were made by Osborne to the bankrupts. The commissioner has therefore directed that the preferential payments must be returned, and that Osborne's claim thereto, or to any proceeds of the stock or accounts for stock sold, must be dismissed. The present application is to confirm this report.

The attorneys for Osborne point out that before the amendment of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 560, 561 [U. S. Comp. St. 1901, p. 3443]), by chapter 487, Act Cong. Feb. 5, 1903, § 57g, 32 Stat. 799 (U. S. Comp. St. Supp. 1907, p. 1030), the statute required the return of preferential payments, under much broader conditions than after amendment. Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, determined the scope of section 57g before amendment, and it is apparent that under the present form of the law the requirements of section 60b and section 67e must be found present before payments within four months can be held to have been preferential, and necessarily to be returned before the creditor who received those payments can present his claim. The commissioner has expressly found that the Shieblers were insolvent throughout the entire period, that their liquidation was merely postponed by the payments of Osborne, and that his relations with the bankrupts and his knowledge of the facts were such that he should have anticipated the likelihood of their being thrown into bankruptcy at any time, and that he took the risk, at the time of making each advance, of having to face the filing of a petition in bankruptcy within four months of the payment. In other words, he has formed a decision based upon section 60b of the statute, but has quoted part of the language of section 60a.

There seems to be evidence to support these findings and conclusions of the commissioner. The testimony of the witnesses was heard by him. The responsibility for this finding, and the effect of the finding, cannot be shifted by any amount of argument or belief that Osborne did not intend to defraud other creditors, and it seems to the court that the report of the commissioner must be confirmed.

It is needless to add, but perhaps the matter should be disposed of at this time, that the proof of claim for money advanced by Osborne. now pending before the referee, the amount of which will be increased if the preferential payments are repaid to the trustee, is not, under the present circumstances, governed by the provisions of section 57n of the bankruptcy law.

As to the chattel mortgage, an entirely different situation arises. Having ceased to make advances on account of stock, upon the 1st of May, 1907, Osborne, in order to furnish money to the Shieblers for

the payment of wages and necessary running expenses at the factory, loaned $5,000 in cash, for which he took back a chattel mortgage upon fixtures, tools, etc. This mortgage was for a present consideration, and when made was valid in every particular, but was not recorded in the office of the proper official of the county of Kings until the 10th day of August, 1907. At that time chapter 418, p. 536, Laws N. Y. 1897, was in force as follows:

"Sec. 90. Every mortgage or conveyance intended to operate as a mortgage of goods and chattels * * * which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, is absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, is filed as directed in this article."

The statute provides where the mortgage shall be filed, but not when.

The commissioner has reported that, when the mortgage in question was made, Osborne must be held to have known the financial condition of the bankrupts, and while the delay in the filing of this chattel mortgage was occasioned by a desire to sell the factory, nevertheless the commissioner has found that the mortgage was not filed either immediately or within a reasonable time, and was therefore absolutely void against the creditors as a lien upon the articles covered by the mortgage. There has been no payment, and no question of preference arises except as the lien of the mortgage is claimed by the mortgagee.

The discussion of this question in Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885, goes so fully into the numerous cases decided in the courts of the state of New York and of the United States that it is unnecessary to do more than refer to that opinion. This case also determines, so far as the highest court of the state of New York can, the question of the validity of a chattel mortgage lien, under the circumstances set forth in that case. The case of In re New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133, was there distinguished, and the doctrine of Skilton v. Codington has been followed in the Matter of Gerstman & Bandman, 19 Am. Bankr. Rep. 145, 157 Fed. 549, 85 C. C. A. 211.

It will be observed that the case of Skilton v. Codington, supra, however, had to do with the question of a stock of goods, by the terms of the chattel mortgage expressly intended to be sold in the ordinary course of business, and thus brought within the category of many cases in which a chattel mortgage of this sort has been held void. This court has already made a distinction with reference to such matters, in the case of In re Davis (D. C.) 155 Fed. 671. And inasmuch as the chattel mortgage now under consideration was originally made for a present consideration, within four months of bankruptcy, and inasmuch as the filing of the chattel mortgage and the attempted acquisition of a lien thereby was also within the four months' period, this court has considered carefully the question whether the mortgage should be declared void on the ground of unreasonable delay in the filing thereof, or whether the whole transaction, including both the filing and the making, should be deemed presumptively preferential, and the matter referred back to the special commissioner for determination as to the

good faith and propriety in the making of the loan by the mortgagee, and to ascertain whether any creditors became such or dealt with the bankrupts subsequent to the making of the chattel mortgage, and relying upon the possession of the assets by the bankrupt, with no mortgage on file.

The case, however, of Tooker v. Siegel-Cooper Co., 55 Misc. Rep. 68, 106 N. Y. Supp. 277, in the Supreme Court of New York, seems to answer the question raised, and to extend the doctrine of Skilton v. Codington, supra, to all chattel mortgages made under such circumstances, as to which there is an unreasonable delay in filing, without reference to whether the goods mortgaged were intended to be consumed or sold, or not.

It is difficult to apply this doctrine or to draw the line. To say that a chattel mortgage upon fixtures and tools, valid when made, and for full consideration, but as to which some unreasonable delay in filing inadvertently occurred, shall be absolutely void as against a prior creditor, who, for the sake of example, had not investigated the matter of his debtor's standing, nor even thought of collecting his debt, until the question is brought to his attention subsequent to the filing of the mortgage, seems to this court to be an exceedingly harsh proposition. But in the case under consideration, the commissioner having found that the parties were insolvent, and that their condition must have been known to both the mortgagor and the mortgagee, that the delay in filing the chattel mortgage, while honest in its purpose, was nevertheless during a period in which other creditors could have instituted proceedings in bankruptcy, and under circumstances out of which bankruptcy actually resulted in less than four months, the delay in filing such a chattel mortgage would seem to be inexcusable, unless done with the full responsibility therefor, including the probability that the mortgage would be declared void if any creditors' rights were affected thereby, whether they be creditors whose claims originated subsequent to the date of the making of the chattel mortgage or prior thereto.

For the reasons above stated, therefore, the report of the special commissioner will be confirmed.