### In re GOLDSMITH.

#### (District Court, E. D. New York. March 17, 1909.)

BANKRUPTCY (§ 355*)—ADMINISTRATION OF ESTATE—ADJUSTMENT OF LIENS.

 The rights of a chattel mortgagee of a bankrupt determined in the proceeds of property sold by the trustee, where the proceeds of the mortgaged and unmortgaged property, respectively, could not be definitely ascertained.

 [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 355.*]

In Bankruptcy.

Samuel Packard, for petitioner.

Liebmann, Naumburg & Tanzer, for trustee.

CHATFIELD, District Judge. The property of the bankrupt consisted of a considerable quantity of machinery, shafting, dies, tools, and stock, which had been acquired through a considerable period. In the month of August, 1906, Goldsmith made a mortgage to John C. and James H. Dowd to secure the sum of $4,000, with interest at 6 per cent., on or before January 1, 1907. This mortgage was properly filed, and was not paid, but was subsequently assigned to the Royal Bank of New York, which took up the mortgage upon the 17th day of January, 1907, and also, on the 18th day of January, 1907, took a further mortgage upon the same and additional chattels for the sum

of $3,000, payable one month after date. This mortgage was not filed until the 12th of July, 1907. The Royal Bank also advanced certain moneys to Goldsmith and took security in the form of a note and an assignment of various accounts as collateral to the note.

Goldsmith was adjudicated a bankrupt upon the 12th day of December, 1907, upon the petition of the Royal Bank of New York, and a trustee was elected in February, 1908. The property of the bankrupt was sold, and the proceeds of the sale directed to be held subject to the lien of the chattel mortgages of the Royal Bank, if they should be, and to the extent that they should be, declared liens. Upon the sale, an officer of the bank was present, and before the sale checked off the property which the bank claimed was covered by its chattel mortgage, but did not give any information as to the identity of these articles to the trustee or the auctioneer, and the trustee and the auctioneer did not do more than to keep track of the prices of the parcels as they were sold. It has thus become impossible to identify the chattels in the sale, so as to classify them under the different mortgages; it appearing from the testimony that some of the fixtures, machinery, and chattels were in the bankrupt's possession prior to the making of the first mortgage, some prior to the making of the second mortgage, and some acquired thereafter. A reference has been had to determine the validity of the mortgages and the amount of the liens, in so far as they might be held valid. The referee has reported that the second mortgage is invalid through failure to record it according to law. In this respect the referee's report will be confirmed. In re Shiebler (D. C.) 165 Fed. 363.

As to the first mortgage the referee has reported that it is a valid lien, and has decided that property to the amount of $2,874.02, less $180.20 expenses, making net $2,693.82, should be considered as the proceeds of the property covered by that mortgage. In arriving at this amount the referee has arbitrarily (but, as he says, for the purpose of doing equity) approximated the amount of the dies, machinery, and such articles which he considered were likely to have been purchased during the periods represented by the property mortgaged in each instance. There is not much reason to question the equity of the referee's finding; but, inasmuch as the trustee was bound to sell the property and to keep a record of each article sold, it is impossible to avoid the conclusion that the trustee is unable to establish the identity of the items of the sale as to which he was to keep a separate account. On the other hand, the claimant did not or cannot identify, by lots or prices, the articles which he picked out prior to the sale as those covered by his chattel mortgage. Under these circumstances, questions as to the likelihood of the older goods bringing less prices than the newer, or that the bankrupt would have replenished the stock at about the same rate throughout the entire period, in this way making an equitable division of the assets received from the sale, are impossible as the basis of a decision. It might be properly the result of an agreement or compromise between the parties; but, as a matter of law, either the trustee has failed to perform all the obligations which rested upon him, or the claimant has not proven his right, nor identified the articles disposed of at the sale upon which he claims a lien.

The court is inclined to believe that, if the trustee had proceeded carefully, he could have preserved means of identifying the property claimed to be covered by the first chattel mortgage. But in any event the burden of proof as to the property mortgaged would be upon the mortgagee, and he has given no testimony to show by what means he identified the property which he alleges was present at the time of the sale. The testimony does show, however, and this is apparently undisputed, that the mortgagee testifies that all of the property covered by his mortgage was identified by him and in the possession of the trustee at the time of the sale. The total amount of the mortgage was $4,000, and interest has been waived. If all of the property was present, but its identity cannot be proven, it would not be unfair to assume that sufficient was realized from it to cover the amount of the mortgage, and the balance belonging to the bankrupt's estate could thus be determined.

Upon this basis, allowing $4,000 as the proceeds from the sale of the property covered by the first mortgage, and the referee having reported that $810 was obtained on the sale from the property covered exclusively by the second mortgage, in addition to that described in the first, we have $4,810 (out of $6,234.51, total proceeds of the sale) which was realized from property pledged for loans aggregating $7,-000. The proportion of $4,810 to $7,000 would give $2,748.57 to $4,000. Thus we get $2,748.57 as the amount realized from the chattels covered by both mortgages, which is strangely near the amount found by the referee by the method which he used.

But, assuming that the mortgagee was entitled to the whole amount of the first mortgage, the testimony also shows that the mortgagor paid at the bank, in the form of interest, amounts which are claimed to be at an usurious rate. The bank has claimed the right to keep these extra amounts under its contract, and that it has the right to a jury trial upon any attempt to collect them by the trustee. It does not seem necessary to consider the question of usury, for the overpayments were certainly made by the mortgagor to the mortgagee upon a chattel mortgage transaction, and not upon a demand loan at market rate for call money, and should be credited as payments on account of principal, inasmuch as they have been carefully kept within the account between the mortgagor and mortgagee, without reference to other debts. The result would be that, if the mortgagee was entitled to the face of the mortgage, he must credit the mortgagor with these amounts, namely, the sum of $998, and the mortgagee then would be entitled to receive from the proceeds of the sale the difference, or $3,002, less expenses of $180.20, making net $2,821.80. Upon all the circumstances this would seem to be an equitable, as well as a legal, basis for determining the rights of the mortgagee at the sale, and the referee's report will be modified to that extent.

As to the other transactions between the bank and the bankrupt, a dispute has arisen, and argument was had upon this motion; the bank claiming that it has a right to apply assets in its hands to the payments of the unsecured debts, and the trustee claiming that the security should be released first. Under the provisions of the bankruptcy law

(Act July 1, 1898, c. 541, § 68, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]) it would seem that the bankrupt has the right to set off funds in his hands against the amount proved as a general claim against the estate, and also to hold the security for the purpose of reducing the amount of the creditors' claims, and these differences between the parties will apparently be adjusted upon proof of the claims, without any determination at the present time.

The Royal Bank is entitled to recover out of the fund its disbursements as they may be taxed and allowed, in lieu of taxable costs on foreclosure; but no allowance for counsel fees can be granted.