ecution had been returned unsatisfied thereon. The judgment creditor also stated that he nor any other person by his order had received any manner of security for said debt, "but that in the action above referred to and in proceedings supplementary to execution one John A. Wrede was duly appointed receiver of the property of said bankrupt." While payment of the claim to the judgment creditor would prevent the plaintiff as receiver from again collecting it, still the receiver held the title to the property of the judgment debtor, and any lien thereon was vested in him, and not in the judgment creditor. There is no pretense that the claim was fraudulently presented in·the bankruptcy court, or that whatever security existed was fraudulently concealed. On the contrary, on the face of the claim it was stated that a receiver in supplementary proceedings had been appointed. What the judgment creditor said in his claim was that he nor any person in his behalf ·had any lien or security for the debt, except that which arose from the appointment of the plaintiff as receiver in supplementary proceedings taken by virtue of the judgment which was set forth. He did not state that he waived his lien if he had· any, nor any title to property which the receiver had, nor did he in words say that he presented his claim without waiving whatever preference he might have, which unquestionably would have preserved his rights. Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128. The claim was a notice that a judgment had been obtained against the bankrupt which had not been paid, and that the plaintiff had been appointed receiver in supplementary proceedings thereunder. We are of the opinion that this cannot be deemed a surrender of such security or such title as the plaintiff as receiver had, or an election of remedy to proceed alone in the bankruptcy court.

In our view the money in controversy belongs to the plaintiff, and the judgment must be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.

---

NIAGARA FALLS HYDRAULIC POWER & MFG. CO. v. SCHERMERHORN.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1909.)

1. FIXTURES (§ 27*) — LEASE TO MANUFACTURING COMPANY — REMOVAL OF BUILDINGS AND MACHINERY.

A lease to a manufacturing company for 25 years explicitly provided that, if it was terminated prior to a specified date, buildings erected by lessee should become the property of lessor, and the right of the lessee to remove such buildings on the termination of the lease, either by notice or expiration. of the term, was subject to the express condition that all rental be paid, and it was provided that after such date the buildings and machinery should not be removed unless all rents were paid. *Held*, that this did not relate alone only to the termination of the lease by lessee at the end of any period of five years under an option given by the preceding section, and that it was intended to vest title in lessor on· termination of the lease for default in payment of rent.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 22–25; Dec. Dig. § 27.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. FIXTURES (§ 27\*)—CONTRACT FOR OWNERSHIP BY LESSOR—COMPETENCY.**

It is competent for parties to contract that any or all of the property placed on or attached to the premises shall belong to lessor on termination of the lease.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 22–25; Dec. Dig. § 27.\*]

**3. FIXTURES (§ 14\*) — BETWEEN LANDLORD AND TENANT — TERMINATION OF LEASE.**

In absence of express agreement as to their ownership, buildings constructed by lessee of masonry and other substantial material, and permanently attached to the land, become a part thereof, and lessee has no right to remove them.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 22; Dec. Dig. § 14.\*]

**4. FIXTURES (§ 27\*)—FORFEITURE BY LESSEE ON TERMINATION OF LEASE—CONTRACT AS BEING UNCONSCIONABLE.**

A provision in a lease for the forfeiture of buildings and machinery placed on the premises by lessee, on the termination of the lease for nonpayment of rent, is not unconscionable, and its enforcement does no injustice to lessee or its successor in interest, where it is only necessary to pay the rent within a specified time after service of notice to avoid its effect.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 22–25; Dec. Dig. § 27.\*]

**5. CHATTEL MORTGAGES (§ 7\*)—PROVISION IN LEASE SECURING RENT—EFFECT AS MORTGAGE.**

The effect of a provision in a lease that buildings, machinery, fixtures, and property of lessee placed on the premises should be regarded as personal property, and held by lessor as collateral security for the payment of rent is not that of a chattel mortgage, so as to be void as to creditors for failure to file as the statute requires.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 18–19; Dec. Dig. § 7.\*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Niagara County.

Action by the Niagara Falls Hydraulic Power & Manufacturing Company against Julian H. Schermerhorn, as trustee in bankruptcy of the Acker Process Company. From a judgment for plaintiff (60 Misc. Rep. 209, 111 N. Y. Supp. 576), defendant appeals. Affirmed.

The action is brought to recover the value of certain personal property, left over after a fire which burned the buildings and plant of the Acker Process Company, a domestic corporation, of which the defendant was appointed the trustee in bankruptcy. The defendant sold the property, and the plaintiff contends that the property belonged to it.

The plaintiff is a power company at Niagara Falls, and owns the lands upon which the process company's buildings and plant were located. In 1899 the process company, desiring to carry on the business of manufacturing bleaching powder and caustic soda (which is made from common salt) and other by-products, entered into a contract in writing, dated June 14, 1899, by which the power company leased to the process company certain lands for 25 years, beginning on the 15th day of February, 1900, and terminating on the 15th day of February, 1925, at an annual rental of $500. The lease was from time to time extended to lands additional to those described in the original lease, and the rent increased accordingly, so that eventually the annual rent for all the demised premises was $1,050, payable quarterly on the 10th day

of May, August, November, and February, and at the same time at which the compensation for furnishing power (which will be presently referred to) was payable. The agreement of June 14, 1899, further provided: That the process company should use the demised premises for the purpose of erecting thereon buildings and plant for carrying on the business of manufacturing the products referred to, and the power company should furnish the process company, for use on the premises and not elsewhere, electric current to the extent of at least 3,200 horse power, in the manner specified in the agreement, at an annual rental of $17.50 per horse power, and should proceed with all reasonable dispatch, by ordinary methods, to install two turbine wheels, three electrical generators, and other electrical appliances necessary for the purpose of furnishing such power; that the process company should not use the buildings and premises and plant for any purposes other than those specified; and that no electricity or electric power should be used thereon or therein, except that furnished by and with the consent of the power company.

The power company installed the turbine wheels, generators, and other appliances as agreed, at a cost of $100,000 and upwards, and the process company erected substantial buildings of masonry, metal, and other substantial material, installed therein various machines, piping systems, fixtures, and appliances for carrying on its said business. The power company supplied the power, and the manufacturing business was carried on until on or about February 25, 1907, when the fire occurred and practically destroyed the usefulness of the buildings and plant.

The seventh paragraph of the lease provided as follows:

"Seventh. Payment for power shall be made on the 10th days of May, August, November and February as above stated, and shall be made by the lessee promptly and without any regard to any counterclaims whatever, if any exist. If such payment for power shall not be made promptly when due, the lessor may at its election, terminate this lease upon the following conditions: The lessor shall give the lessee thirty days' notice of its election and intention so to terminate the lease, whereupon this lease and agreement shall be terminated at the expiration of thirty days from the service of such notice, to the same extent and effect as if the term of twenty-five years hereinbefore provided shall have expired; but if the lessee shall within thirty days pay said rent and interest thereon, such said notice shall be deemed to be of no effect and shall be considered as never having been served. Any claim or demand which the lessee may have or claim to have against the lessor shall, if disputed, be the subject of suit or adjustment against the lessor, but shall not be an offset or counterclaim against any claim for rent hereunder."

The fifteenth paragraph of the lease provided for the lessee terminating the lease, and is as follows:

"Fifteenth. It is further covenanted and agreed that the lessee shall have the right to terminate this lease and agreement at the end of any period of five years during the continuance hereof, to wit, on the 15th day of November in either of the years 1904, 1909, 1914 and 1919, by giving to the lessor written notice of its intention to do so at least six months prior to the date of the proposed termination of such lease, the time to be specified therein, the same as if that date was the time originally fixed for the termination hereof."

The sixteenth paragraph relates to the rights of the respective parties in the buildings and plant, when the lease is terminated, and is the one under which the power company claims title to the property in question. It reads as follows:

"Sixteenth. At the termination of this lease and agreement either by notice or by expiration of the term or for any cause hereunder, the lessee may except as hereinafter provided if all rental hereunder has been paid, remove from the premises leased hereunder or under any susbequent lease, all the buildings, machinery, fixtures and other property of the lessee erected or placed on said premises by it, all of which is hereby regarded as personal property, but said buildings of the lessee shall not be removed from the said premises if this lease be terminated prior to November 15, 1909, but in case of the termination hereof prior to November 15, 1909, said buildings shall become and be the property of the lessor, nor shall said buildings or machinery of the lessee be removed from said premises subsequent to November 15, 1909, unless all rents

hereunder reserved are fully paid as herein agreed, and if such rents or any part thereof shall remain unpaid, the said buildings, machinery, fixtures and property of the lessee shall be held by the lessor as collateral security for the payment thereof. During the term of this lease and agreement the lessee may erect or place upon the premises leased hereby or by any subsequent lease by the lessor, all such buildings, machinery, fixtures and other property as may be necessary or proper for the purpose of its business as hereinabove described."

On the 1st day of May, 1907, there was due and owing to the power company rentals for land and power to the amount of $23,002.50, and on that day the power company served a 30 days' notice as provided in the seventh paragraph of the lease. The rent was not paid, and the lease terminated on May 31, 1907. The power company notified the defendant trustee of its claim, but he disregarded the notice and took possession of the property in question, included it as part of the assets of the estate of the process company, and sold it.

The trial court held that the provision holding the buildings and machinery as collateral security for the rent was, in effect, a chattel mortgage, governed by the statute relating to the filing thereof, and that, since the lease and agreement had not been filed as provided by the statute, it was void as to creditors, but that under the other provision of the lease and agreement, permitting the power company to terminate the lease for nonpayment of rent, and providing that if the lease was terminated before November 15, 1909, the buildings should belong to the power company, such buildings and any and all parts thereof, whether of machinery, fixtures, piping, or other material theretofore constituting a part of said buildings to the extent therein named, and whether severed from the freehold by reason of the fire or otherwise, became and were the property of the plaintiff and entitled it to the lawful possession thereof. The value of the property so sold and converted by the defendant trustee aggregates $44,166.94, which is the amount the trustee realized therefrom. Judgment was directed for that amount, less $7,116.23, the expense incurred in clearing up the débris on the property in question, remelting the same, and otherwise caring for and getting the same ready for market; the amount for which judgment was directed being $37,-050.71. The defendant appeals.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Louis Marshall, for appellant.
Charles M. Harrington and John L. Romer, for respondent.

KRUSE, J. The primary question involved in this controversy is whether upon the termination of the lease under the seventh paragraph thereof, for nonpayment of the rental, the buildings belonged to the lessor, the plaintiff power company. If so, the further question is presented as to what part of the salvage left after the burning of the buildings and plant is a part of the buildings within the meaning of the provisions of the lease and agreement.

As regards the latter question, the careful and exhaustive decision, supplemented by the opinion of the learned trial judge, makes it clear just what items of the salvage were allowed, and their relation to the buildings, and I think the conclusion there reached is correct, and that the amount recovered is none too large, unless, of course, the defendant is right on the main question.

It is contended on behalf of the defendant that the provision contained in the sixteenth paragraph, which provides that if the lease is terminated prior to November 15, 1909, the buildings shall become and be the property of the lessor, relates to the termination of the lease

by the lessee, under the option given it by the fifteenth paragraph, and that it was not intended to vest the title to the buildings in the lessor, where the lessor itself terminates the lease for a default in the payment of rentals. It is unnecessary to state the arguments urged by counsel for the respective parties for and against this contention. It seems to me that the language of the sixteenth paragraph does not admit of the construction contended for by the defendant. It is there explicitly provided that in case the lease is terminated prior to November 15, 1909, the buildings shall become and be the property of the lessor, and the right there given to the lessee, of removing the buildings, is subject to the express exception and condition that all rental has been paid; and it is even provided that after November 15, 1909, the buildings or machinery shall not be removed from the premises unless all rents have been paid. It was entirely competent for the parties to contract that any or all of the property placed upon or attached to should belong to the lessor upon the termination of the lease. Indeed, if there had been no express agreement in that regard, I think the buildings, constructed as they were of masonry and other material of a substantial nature, and permanently attached to the land, would have become a part thereof, and that the lessee would not have had the right to remove the same in the absence of any agreement giving him that right.

Counsel for the defendant argues that the interpretation contended for on behalf of the plaintiff should not prevail, because the effect thereof would be to impose upon the lessee a forfeiture of its property, which should be avoided. Assuming that the provision for a termination of the lease is a forfeiture, and not a conditional limitation, as was held by the trial court, it is not unconscionable, and its enforcement does no injustice to the lessee or its successor in interest, the defendant, since it was only necessary to pay the rent within the time after service of notice as provided by the lease, to avoid the effect of the provision. And it may be that the defendant could pay such past-due rent even after that time and be relieved from the effect of such default upon making a proper case for equitable relief; but no such relief was sought and is not now asked, perhaps for the reason that the defendant trustee does not feel warranted in paying the past-due rent and holding the property under the terms and conditions of the lease.

If the only effect of this sixteenth paragraph, as regards the rights of the lessor in the buildings when the lease is terminated for the non-payment of rent, is that of a chattel mortgage, as contended on behalf of the defendant, then I think the failure to file the mortgage as the statute provides makes the mortgage invalid as to creditors, and that the defendant, being a trustee in bankruptcy of the creditors, may successfully attack the mortgage upon that ground. Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885. But I think to so interpret that paragraph would do violence to the plain and explicit language of the agreement. Such agreements as this are not uncommon between lessor and lessee, as will be seen by reference to the American & English Encyclopedia of Law, where the cases

are collated (13 Am. & Eng. Ency. 655 to 673), and they should receive a fair and reasonable interpretation.

The judgment should be affirmed, with costs. All concur, except McLENNAN, P. J., who dissents.