In re GRAINGER.*

(Circuit Court of Appeals, Ninth Circuit. February 3, 1908.)

No. 1,444.

1. CHATTEL MORTGAGES—VALIDITY—STATUTES—PROPERTY SUBJECT TO MORTGAGE.

Civ. Code Cal. § 2955, provides that mortgages may be made only on the personal property therein specified. Subdivision 8 includes upholstery, furniture, and household goods; and subdivision 13, the machinery, casks, pipes, tubes, and utensils used in the manufacture or storage of wine, fruit brandy, fruit syrup, or sugar; also wines, fruit brandy, fruit syrup or sugar, with the cooperage in which the same are contained. *Held*, that neither of such provisions authorized a chattel mortgage on a soda fountain, carbonator, candy machines, tables, chairs, and other utensils in a candy and ice cream store.

2. BANKRUPTCY—CHATTEL MORTGAGES—VALIDITY AS AGAINST CREDITORS.

Civ. Code Cal. § 2955, provides that mortgages may be made only on certain enumerated personal property, and section 2973 declares that mortgages of personal property other than that specified in section 2955 shall be valid between the parties, their heirs, legatees, and personal representatives and persons who, before parting with value, have actual notice thereof. *Held*, that a chattel mortgage of property other than that specified in section 2955, executed in good faith for a bona fide consideration, was valid against the mortgagor's trustee in bankruptcy and general creditors.

3. SAME—CONTRACT OF BANKRUPT—PERFORMANCE BY TRUSTEE OF—ORDER OF COURT.

Where a bankrupt had purchased a corn popper under a conditional sale contract with which he had not complied at the time bankruptcy intervened, the trustee was under no obligation to carry out the agreement and pay the balance of the contract price, and having sold the popper with

*Rehearing denied June 10, 1908.

other goods belonging to the bankrupt en masse, without regard to its present worth, he had no power to pay to the seller the balance of the purchase price without an order of court entered on notice to the creditors.

Petition for Revision of Proceedings of the District Court of the United States for the Southern Division of the Southern District of California.

Tanner, Taft & Odell, for bankrupt.

Shankland & Chandler, for petitioner.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

ROSS, Circuit Judge. There is no dispute about the facts of this case, which are in substance as follows: On the 31st day of October, 1905, the bankrupt and his wife borrowed of the petitioner $1,500, giving their note therefor, payable on demand, and secured by a mortgage duly acknowledged, and accompanied by the affidavits of the mortgagors and mortgagee to the effect that it was made in good faith and without any design to hinder, delay, or defraud creditors, and which mortgage was duly recorded November 1, 1905, in the recorder's office of Los Angeles county, Cal., in Book 163 of Mortgages, page 207, covering certain real estate therein described and situated in the city of Redlands, county of San Bernardino, and also all the fixtures, appliances, tools, and machinery, except one piano and one desk situated in the store occupied by Grainger at No. 161 Pier avenue, Ocean Park, in the city of Santa Monica, county of Los Angeles. Subsequently, and about June 1, 1906, the bankrupt having an opportunity to sell the Redlands property, requested the petitioner to release the land from the lien of the mortgage, and to take from him a mortgage on all of his goods, fixtures, machinery, and furniture in the store at No. 161 Pier avenue, in the city of Santa Monica, being the same place in which was the personal property described in the first mortgage mentioned. Without any other consideration, the petitioner released the Redlands realty, and took from the bankrupt a new note executed by himself and wife for the preceding indebtedness of $1,500, but making it payable in installments, $100 to become due July 1, 1906, $150 on the first days of August, September, and October, 1906, respectively, and other payments in monthly installments, with interest at the rate of 8 per cent. per annum, payable monthly. To secure this indebtedness, but without releasing the old chattel mortgage, the petitioner accepted a new chattel mortgage from the bankrupt and his wife, duly acknowledged by them on the 1st day of June, 1906, which mortgage was in due form and was accompanied by affidavits of the mortgagors and of the mortgagee, to the effect that the same was made in good faith, and without any design to hinder, delay, or defraud creditors, and which mortgage was recorded June 1, 1906, in Book 177 of Chattel Mortgages, page 196, Records of Los Angeles county. The goods and chattels covered by this second mortgage were in the store at No. 161 Pier avenue, Santa Monica, and consisted of 1 soda fountain, 1 carbona-

ter, 1 candy pulling machine, 3 showcases, 6 tables, 24 chairs, 8 stools, 1 cigar case, 1 cash register, 1 light and cooking plant, 1 candy cutter, 2 freezers, 1 2-horse power motor, marble slabs, about $700 worth of ice cream, tubs and cans, 1 cream separator, milk cans, ice box, all candy jars and glasses, 1 dropping machine, 10 tons salt, stock of extracts, all linoleum, 1 candy furnace, copper kettles, 1 horse, 1 wagon, 1 popcorn crisp machine with popper, 8 ice cream cabinets, all candy tools, 1 popcorn popper, and all stock and raw materials therein. The indebtedness from the mortgagors to the petitioner was bona fide in every respect, and the mortgages were taken in good faith and without any idea either on the part of the petitioner or on the part of the bankrupt that he was in an insolvent condition, or that bankruptcy proceedings were contemplated.

On the 9th of August, 1906, Grainger filed his petition in bankruptcy, and was, on the 10th of that month, duly adjudicated a bankrupt. On the same day the Los Angeles Trust Company was appointed receiver of his estate, and qualified as such, and on the 20th day of the same month sold as perishable all candy, gum, and grape juice coming into its possession. On the 22d of August, 1906, the trust company was discharged as receiver and appointed trustee of the estate, and as such took possession of the property. It was then stipulated by the parties in interest that the trustee should sell all of the property pursuant to an order of the bankruptcy court, and that the lien of the mortgages of the petitioner, if any it had, should be transferred, and the moneys derived from the sale should be charged with the lien of the mortgages, if any there was. All of the property was sold on the 6th day of September, 1906, for the total sum of $950, which sale was confirmed by the court. In due time the petitioner filed its petition with the court asking that the money derived from the sale of the goods be turned over to it on its mortgage indebtedness. The goods were sold en masse, and among them was a combination peanut and popcorn popper which on May 1, 1906, the bankrupt had ordered of the California Supply Company, at the price of $155, of which he had paid $50, leaving a balance due of $105 of the purchase price. At the time he purchased the popper he agreed to sign a contract by which the supply company should retain title to the popper until the debt should be paid off at the rate of $15 per month. The popper was delivered on the 16th of May, 1906, and on the 9th of June of that year Grainger signed the contract and paid the $50 mentioned. That contract was never recorded, and the petitioner had no notice of its existence when it accepted the mortgage of June 1st covering the same. At the time the trustee took possession of the popper it had notice of the rights of the supply company, and its claim, and on August 16, 1906, the receiver was duly notified that the supply company claimed the popper, and received like notice as trustee, and on the day of sale the supply company notified the trustee at the place of sale that it claimed the popper, and also appeared before the referee when the order was made confirming the sale, and protested against such confirmation. The referee held that the supply company was entitled "to the sum of $105 due upon the peanut and popcorn popper sold to the said bankrupt under contract on the 16th day of May, 1906," and also denied the petition-

er's petition for the money arising from the sale of the chattels covered by the mortgages under which it claimed, which action of the referee was affirmed by the court below when brought before it.

The claim of the petitioner here is that the court below erred in holding that the $105 due the supply company on the contract sale of the popcorn popper should be paid to that company as a prior claim, and that the court also erred in holding that the petitioner had no lien on the chattels covered by its mortgages as against the creditors of the bankrupt or the trustee.

Section 2955 of the Civil Code of California provides, "Mortgages may be made upon the following personal property, and none other"— enumerating in 22 subdivisions a large number of chattels; subdivisions 8 and 13 being the only ones under which it is even claimed that the articles described in the chattel mortgages here in question come. Those subdivisions read as follows:

"8. Upholstery, furniture, and household goods."

"13. The machinery, casks, pipes, tubes, and utensils used in the manufacture or storage of wine, fruit brandy, fruit syrup or sugar; also wines, fruit brandy, fruit syrup or sugar, with the cooperage in which the same are contained."

We think it plain that the articles enumerated in the chattel mortgages here in question are not embraced by either of these subdivisions of section 2955 of the Civil Code of California. The above-mentioned section is a part of title 14, c. 2, art. 3, of the Civil Code, and succeeding sections of the same article prescribe the form of mortgages of personal property, and declare that such a mortgage "is void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property in good faith and for value, unless:

"1. It is accompanied by the affidavit of all the parties thereto that it is made in good faith and without any design to hinder, delay, or defraud creditors.

"2. It is acknowledged, or proved, certified, and recorded in like manner as grants of real property."

By a subsequent statute of California, now embodied in section 2973 of the same article of the Civil Code, it is provided that:

"Mortgages of personal property other than that mentioned in section twenty-nine hundred and fifty-five, and mortgages not made in conformity with the provisions of this article, are nevertheless valid between the parties, their heirs, legatees, and personal representatives, and persons who before parting with value have actual notice thereof."

While, therefore, it is true that none of the personal property covered by the chattel mortgages under which the petitioner claims came within any of the enumerations of section 2955 of the Civil Code, it was authorized to be mortgaged by the subsequent act embodied in section 2973 of the same Code, and was, as has been expressly held by the Supreme Court of the state, good as between the parties thereto, and as to all other persons except creditors of the mortgagor and subsequent purchasers in good faith and for value. Perkins v. Maier & Zobelein Brewery, 133 Cal. 497, 498, 65 Pac. 1030, and cases there cited.

It is not contended that there was any actual fraud in the making or taking of these chattel mortgages; on the contrary, it appears that they were executed to secure money loaned by the petitioner in good faith to the mortgagors, and it further appears that the mortgages were in the prescribed form, were accompanied by the prescribed affidavit of the mortgagors and mortgagee, and that they were duly put upon the public records long prior to the adjudication in bankruptcy. Nor is it pretended that any of the creditors of the bankrupt mortgagor ever secured any lien of any character upon any of the property.

In the case of Lemon v. Wolff et al., 121 Cal. 272, 275, 53 Pac. 801, it was held by the Supreme Court of that state that a chattel mortgage which is good as between the parties thereto can only be questioned by creditors of the mortgagor who have acquired a lien upon the mortgaged property, or who seek to levy process thereon, and that a mere creditor at large, without some process for the collection or enforcement of his debt, cannot do so.

It is true that in the case of Ruggles v. Cannedy, 127 Cal. 290, 53 Pac. 911, 59 Pac. 827, 46 L. R. A. 371, decided intermediate the decisions in Lemon v. Wolff, and Perkins v. Maier & Zobelein Brewery, the Supreme Court of California held that where creditors of an insolvent mortgagor of personal property are prevented from suing by reason of the adjudication of his insolvency under the state insolvency act, and are limited to the proof of their claims against him, such proof is the equivalent of a judgment, and shows sufficient interest of the creditors in the mortgaged property to warrant the assailing of the chattel mortgage as a void act for want of prompt record, and that the assignee in insolvency represents the interest of the creditors, and may recover the property for their benefit; but the present case arises under the United States bankruptcy act.

In York Manufacturing Company v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, it appeared that the York Manufacturing Company had supplied certain machinery to the Mount Vernon Ice, Coal & Milling Company, afterwards adjudged a bankrupt corporation, under a conditional contract providing, among other things, that the title to and ownership of the machinery should remain in the York Manufacturing Company until the entire purchase price agreed upon should be actually paid in cash, the vendor being given the right to enter the premises of the vendee and remove the property in case of default. Twenty-five per cent. only of the price of the machinery was ever paid. A statute of Ohio, where the case arose, required such a contract to be filed for record, which was not done in that case. There was also a statute of the same state relating to chattel mortgages which declared such a mortgage absolutely void as against creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, should be deposited forthwith as directed in the act. The Supreme Court in the case cited referred to a decision of the Supreme Court of Ohio, in which that court held that the chattel mortgage was not void for lack of filing as between the parties thereto, but that the Ohio statute only avoided the instrument as to those

creditors who, between the time of the execution of the mortgage and the filing thereof, had taken steps to "fasten upon the property for the payment of their debts."

In York Manufacturing Company v. Cassell, the court said:

"We have not been referred to any decision of the Supreme Court of Ohio as to the meaning of the statute requiring the filing of contracts of conditional sales, but we concur with the Circuit Court of Appeals in this case, that the statute would render the unfiled contract void as to the same class of creditors mentioned in the chattel mortgage statute. Therefore the contract would be void as to creditors who before its filing had 'fastened' upon the property' by some specific lien. As to creditors who had no such lien, being general creditors only, the statute does not avoid the sale, which is good between the parties to the contract."

And the Supreme Court in York Manufacturing Company v. Cassell proceeded:

"We come, then, to the question whether the adjudication in bankruptcy was equivalent to a judgment, attachment, or other specific lien upon the machinery. The Circuit Court of Appeals has held herein that the seizure by the court of bankruptcy operated as an attachment and an injunction for the benefit of all persons having interests in the bankrupt's estate. We are of opinion that it did not operate as a lien upon the machinery as against the York Manufacturing Company, the vendor thereof. Under the provisions of the bankrupt act the trustee in bankruptcy is vested with no better right or title to the bankrupt's property than belonged to the bankrupt at the time when the trustee's title accrued. At that time the right, as between the bankrupt and the York Manufacturing Company, was in the latter company to take the machinery on account of default in the payment therefor. The trustee under such circumstances stands simply in the shoes of the bankrupt, and as between them he has no greater right than the bankrupt. This is held in Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986. The same view was taken in Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577. It was there stated that, 'under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt.' See Yeatman v. Savings Institution, 95 U. S. 764, 24 L. Ed. 589; Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816; Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075. The same doctrine was reaffirmed in Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956. The law of Ohio says the conditional sale contract was good between the parties, although not filed. In such a case the trustee in bankruptcy takes only the rights of the bankrupt, where there are no specific liens, as already stated."

Upon the authority of this decision of the Supreme Court we think it must be held that the chattel mortgages here in question are valid as against the general creditors of the bankrupt.

We have been referred to no statute of California requiring such conditional contracts as that covering the corn popper to be filed for record, and, as a consequence, none prescribing the effect of such nonfiling; but conceding the validity of the supply company's conditional sale as against the petitioner's mortgage, yet that claimant did not pursue the remedy allowed by law for the recovery of the possession of its property, but, after its sale along with the property of the bankrupt, claimed, and was by the court below allowed, the balance of the contract price of the popper out of the gross proceeds of the property sold en masse, and without regard to the worth of the popper

which, for the reason stated, was impossible of ascertainment. The trustee was under no obligation to carry out the bankrupt's agreement to purchase the popper and pay the balance of the contract price therefor. And if he had desired to do so, in order to acquire title to the popper, such payment could only have been made by an order of the court upon notice to the creditors. Sections 253, 256, 263, Loveland on Bankruptcy (3d. Ed.) and Order 28 of General Orders in Bankruptcy (89 Fed. xi, 32 C. C. A. xxviii).

The judgment is reversed, and the cause remanded to the court below for further proceedings in accordance with the views herein expressed.