McKAY v. HAMILL.

(Circuit Court of Appeals, Third Circuit. February 11, 1911.)

No. 91 (1,359).

1. BANKRUPTCY (§ 310*)—ASSETS—LIENS.

The bankrupt, a Pennsylvania corporation, being subjected to constant annoyance by foreign attachments against its property in Maryland, organized the S. Company in Maryland to which it transferred all

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of its personal property in that state, taking all of the stock of the company at a nominal price. Thereafter the S. Company to secure a debt due claimant executed a deed of trust on such personal property, and, the Pennsylvania corporation becoming bankrupt, all of such property was treated as its own and sold as a part of its assets. *Held*, that it was no objection to claimant's right to have its lien paid out of the proceeds of such property that he was not a creditor of the bankrupt but of the S. Company; the equity powers of the court being sufficient to authorize it to regard the lien as an incumbrance following the property.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 310.*]

2. BANKRUPTCY (§ 258*)—PROPERTY OF BANKRUPT—TITLE OF TRUSTEE.

In general a bankrupt's property is taken by the trustee in the situation in which it was held by the bankrupt, and any disposition thereof with reference to the superior rights of the lienholders, when legally ascertained by the court in the exercise of its equity powers in selling the property and disposing of the proceeds, will protect the legal and equitable interests of third persons attaching thereto.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 258.*]

3. BANKRUPTCY (§ 262*)—BANKRUPT PROPERTY—SALE—LIEN.

Ordinarily a sale of bankrupt property without any specific reference to liens will be considered a sale subject to liens, and a direction to sell free from specific liens will be ordinarily considered subject to a superior lien not mentioned; but, if there is a direction to sell free from first or superior liens, the fact that inferior liens are not mentioned does not prevent their being devested in accordance with the ordinary rule governing judicial sales.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 262.*]

4. BANKRUPTCY (§ 267*)—SALE OF ASSETS—LIENS.

Where certain personal property belonging to a bankrupt, on which claimant held a deed of trust, was sold for the benefit of the estate, and all the parties considered the sale as having been made free from liens, and the purchaser also had reason to believe such to be the case, it would be so held and claimant's lien transferred to the proceeds.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 267.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

In the matter of bankruptcy proceedings of the McMillan Lumber Company. From a decree allowing the claim of Gilmore S. Hamill out of the proceeds of certain assets claimed to have been sold free from liens, W. L. McKay, the bankrupt's trustee, appeals. Affirmed.

R. B. Ivory and T. M. Gealey, for appellant.

R. T. M. McCready, for appellee.

Argued before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. The McMillan Lumber Company, a Pennsylvania corporation, was carrying on its business in a timber tract in the state of Maryland, where it had constantly a large amount of personal property in the shape of manufactured and standing timber; the latter, by the laws of Maryland, being under certain circumstances personal property. As a Pennsylvania corporation, it was subject to constant annoyance by having its property in Maryland seized under foreign attachments. It therefore procured the franchise of a Mary-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

land corporation, under the name of the Shields Run Lumber Company, with a capital of $10,000. To this company it transferred all its said personal property in Maryland, taking all the stock of the company at a nominal price.

Afterwards, the McMillan Lumber Company became a bankrupt, and the receiver thereof, duly appointed, applied to the court for an order to sell the goods and chattels of the said bankrupt, stating that a large portion of them consisted of various sorts of lumber, manufactured and unmanufactured, in the state of Maryland. It appears from the record that this property was the property transferred, as above mentioned, by the McMillan Company to the Shields Run Company, but it was treated by the trustee of the former company as part of the assets of the bankrupt estate. The petition of the trustee stated that the property for which an order of sale was asked, was perishable in its nature, and that it was subject to loss and deterioration, as well as to hazard from fire, on account of its location; also, that by reason of the remoteness of its location, it would be difficult to successfully conduct a public sale; and that a number of creditors claimed to hold preferred liens or claims against the said personal property. The petitioner also stated that he had received an offer in cash of $12,600 for the said property, scattered through the forests, being all the assets of the said McMillan Lumber Company, bankrupt, enumerated in certain exhibits, and that the said bid was more than said goods and chattels would bring at a public sale; and that further, by this sale there would be saved to the estate a large amount of expense incurred in the caring for and making sale of said property. Upon this petition an order was made by the referee in bankruptcy, authorizing the sale for the sum of $13,000, for which a bid had been previously filed, and it was further ordered that the sale should be made without prejudice to the claims of lien and title of a certain creditor, Flint, Erving & Stoner Company. Pursuant to this order, the sale was made for the said sum of $13,000, which was paid to the receiver and held by him for distribution.

Shortly after the creation of the Shields Lumber Company, under the laws of Maryland, for the purpose of holding the property of the McMillan Company in that state, G. S. Hamill, the appellee, an attorney at law of the state of Maryland, who had been employed by the McMillan Company in the matter of the foreign attachments of its property in Maryland, and also in the incorporation of the Maryland Company, at the instance of the McMillan Company took up a note of the Shields Lumber Company for $5,000, which he had indorsed, taking from said company as security therefor a lien upon the personal property which had been transferred by the McMillan Company to the Shields Run Lumber Company, in the shape of a deed of trust. This was less than a year prior to the proceedings in bankruptcy against the McMillan Company and to the sale of the lumber and other property above referred to by the receiver in bankruptcy, as assets of said bankrupt's estate, producing the fund here in controversy. A short time after said sale, the said Hamill intervened by petition in the bankruptcy proceeding, and claimed before the referee the balance

remaining after prior liens had been satisfied out of the proceeds of sale of the property upon which he had a lien under a duly recorded Maryland deed of trust. The prior liens mentioned in the order of sale amounted to $6,957.81, and the claim of the appellee under his deed of trust amounted to $4,000, with five years' interest thereon; the fund in the hands of the receiver for distribution being, as above stated, $13,000.

It appears from the testimony that Hamill, as the representative and attorney of the McMillan Company, continued his active interest in its affairs after the bankruptcy, and was instrumental in procuring the favorable private bid authorized to be accepted by the order of court on the trustee's said petition. There is no doubt from the evidence that the price at which the property was sold was understood on all hands to be the full value thereof, and that all liens were thought by the purchaser and others to have been discharged by the sale. Moreover, it appears that the attorneys of the trustee and unsecured creditors gave Hamill to understand, orally and in writing, that the sale would be clear of all liens, and that the fund would be held subject to all the equities of the various creditors. Notwithstanding this, upon the presentation of Hamill's claim before the referee, it was contended by the trustee that Hamill's lien was not discharged by the sale, and it was intimated that he would have to proceed against the property itself in the hands of the purchaser who had taken title under order of the court. The referee sustained this contention, and after ordering the payment of the prior liens of Flint, Erving & Stoner, refused the claim made by Hamill on the balance of the fund. On certification to the court by the referee of his action in the premises, the court below reversed his order and directed the payment of Hamill's lien out of the fund in hand.

It seems to have been recognized in these proceedings, that the property of the Shields Run Lumber Company was, under the circumstances, the property of the bankrupt corporation, and was treated as assets of the bankrupt estate by the trustee and all others concerned, so that the objection by the appellant here, that Hamill's claim was not that of a creditor of the bankrupt corporation, but of a creditor of a distinct and different corporation, from which corporation he received his lien, cannot be sustained. The equitable powers of a court of bankruptcy would be of little avail, if they could not reach and deal justly with such a situation.

The only other objection of the appellant is, that the order of sale was made specifically without prejudice to the liens of Flint, Erving & Stoner, and did not mention the lien of Hamill. Undoubtedly, the general rule is that the property of the bankrupt is taken by the trustee in the situation in which it was held by the bankrupt, and that any disposition of said property made by the trustee must be made with reference to the superior rights of lienholders when legally ascertained. But the court of bankruptcy, in the exercise of its equitable powers, in selling and disposing of the proceeds of the bankrupt's estate, will take care of and protect the legal and equitable interests of third parties attaching thereto. It is true, that ordinarily a sale made

without any specific reference to liens on the property to be sold will be considered a sale subject to such liens. So a direction to sell free from specific liens will be considered ordinarily subject to a superior lien not mentioned. But it does not follow that, in case of a direction to sell free from first or superior liens, without mentioning inferior liens, the latter would not be also divested in accordance with the ordinary rule governing judicial sales. No instance of such a direction has been brought to our attention, and it would seem that the result of such a sale must depend upon the circumstances of the case, the intention of the parties, and the equities arising therefrom. At all events, there is no hard and fast rule that would prevent a court dealing equitably with such a situation. The cases of Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116, and In re Platteville Foundry & Mach. Co. (D. C.) 147 Fed. 828, cited by the appellant, only emphasize the extent of the scope within which courts of bankruptcy permit themselves to act in the administration of the bankrupt estate. The cases themselves illustrate the extent of these equitable powers in the protection of the rights of lienholders, by holding that, in the proceedings for the sale of the bankrupt's estate, secured creditors must have due opportunity to defend their interests. In the case at bar, however, the appellee's position is different. He has consented to the divestiture of his lien, and asserts his equitable claim upon the fund in the hands of the receiver.

The objections made to the allowance of Hamill's claim are technical and unmeritorious. The evidence shows that by all the parties concerned the sale was considered as having been made free from liens, and that especially the purchaser had reason to believe that this was so. It would be a fraud upon him to hold otherwise. The court below was right in not allowing the technical objections made to interfere with a disposition of the fund in accordance with equity and good conscience.

The clear and satisfactory opinion of the learned judge of the court below renders unnecessary any further discussion by this court of the questions involved. The action of the court below in the premises is therefore affirmed.