## In re B. A. LOCKWOOD GRAIN CO.

### McFARLIN v. McFARLIN.

(District Court, S. D. Iowa, C. D. August 25, 1915.)

#### No. 2373.

BANKRUPTCY ⪯267—DISTRIBUTION OF ASSETS—LIENS.

A creditor of the bankrupt, who was also the trustee, claimed a lien upon certain real estate belonging to the bankrupt. Such property, together with other property, real and personal, was sold in bulk by the referee's orders, after the submission of the claim of lien, but before the referee's decision. The claimant was present at the creditors' meeting and consented to the sale, which was made free and clear of all liens. Subsequently the referee decided that claimant had a valid lien, and that such lien followed the proceeds of the sale. *Held*, that the lien could not be established against the proceeds, since it was impossible to determine the amount received from the specific real estate subject to the lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. ⪯267.]

In Bankruptcy. In the matter of the bankruptcy of the B. A. Lockwood Grain Company. Suit by M. McFarlin against M. McFarlin, trustee, to establish a lien. On petition to review the decision of the referee establishing the lien. Reversed and remanded.

Parsons & Mills, of Des Moines, Iowa, for petitioning creditor W. G. Harvison, of Des Moines, Iowa, and John A. Hull, of Boone, Iowa, for objecting creditors.

WADE, District Judge. This case comes before the court upon petition for review.

On August 24, 1914, a petition in bankruptcy was filed against the Lockwood Grain Company, and upon adjudication M. McFarlin, claimant herein, was appointed trustee. On October 26, 1914, McFarlin, the trustee, filed a claim in the sum of $17,195, claiming a lien upon certain real estate in the city of Ames, Iowa, under a deed which he claims was executed as a mortgage. It is also claimed that the description in the deed was by mutual mistake incorrect, and claimant asked that the deed be reformed and the lien established.

On October 27, 1914, the referee appointed a committee of creditors to represent the estate in the matter of the claim so filed by the trustee, who, on account of his personal interest, was incapacitated from acting therein. On the same date, October 27, 1914, at a continuance

⪯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the first meeting of the creditors, an order was made by the referee, directing said M. McFarlin, as trustee, to—

"forthwith expose for sale at private sale, in bulk or singly, the elevator properties, and the mill property, belonging to the estate of the above-named bankrupt, more particularly described as follows: The real and personal property at Ames, Gilbert, Ontario, Kelley, Slater, Sheldahl, Polk City, Crocker, Ankeny, Garden City, Shipley, Cambridge, Lee's Switch, Elkhart, Enterprise, Commerce, Urbendale, and Saylor; the flour and feed mill operated by Shannon & Mott Company, located at Des Moines, Iowa—all of the above property being more fully described in the inventory of assets and liabilities filed herein by M. McFarlin, receiver."

The property upon which McFarlin claimed a lien was the real estate located at Ames, Iowa, and included in the foregoing order. The committee of creditors filed objections to the claim filed by Mc-Farlin, upon which a hearing was had before the referee on December 14, 1914. Evidence was taken, and the cause submitted—judgment to await briefs to be filed by counsel. Decision was finally made by the referee April 24, 1915, sustaining the claim of M. McFarlin, and establishing the same as a "prior claim against the estate of the above-named bankrupt in the sum of $17,195."

On January 16, 1915, after the submission of the case to the referee and before the decision, one Parley Sheldon filed a proposal to purchase all of the property of the bankrupt as above described for the sum of $65,000. Thereupon the referee called a special meeting of the creditors on January 26, 1915. The record shows that at this meeting "the trustee (McFarlin) is present in person and by his attorneys." The offer made by Sheldon having been presented, it was accepted by a majority of the creditors in number and amount of claims filed and allowed, and the referee entered an order approving a sale to be made upon the terms proposed, and an order was made that "the said trustee (McFarlin) shall forthwith sell and convey to the said Parley Sheldon all the trustee's right, title, and interest" in all of the property heretofore described.

On March 9, 1915, in compliance with such direction, the trustee (McFarlin) did execute his deed, conveying all of said property, describing it in detail, unto the Central Iowa Grain Company (being a corporation organized by Mr. Sheldon to receive the property), which deed specifies in detail the proceedings leading up to the sale, and which deed includes the following:

"Whereas, the said M. McFarlin, as trustee in bankruptcy of the estate of B. A. Lockwood Grain Company, bankrupt, was duly authorized, after notice to all creditors and lienholders, by an order of Hon. H. H. Whittaker, referee in bankruptcy, dated October 27, 1914, to sell and convey the property hereinafter mentioned, at private sale, in bulk or singly, free and clear of all liens, and the said trustee having under such order sold the said property described in said order to the Central Iowa Grain Company," etc.

This deed was filed for record April 8, 1915. Thereafter, on April 24, 1915, the referee filed his opinion in the case submitted, holding that McFarlin had a valid lien upon the property described in the deed, and that he was entitled to preference; and the opinion further states:

"It is unnecessary to pass upon the question as to whether or not this court has jurisdiction to reform the deed given claimant by bankrupt. The trustee of the estate, pursuant to the will of the creditors, and under order of court, has sold all of the real and personal property in Ames, including that covered by the conveyance, in bulk, free and clear of liens, to the Central Iowa Grain Company, a corporation composed of creditors of this estate, for an amount greatly in excess of claimant's lien thereon. The lien of the claimant would therefore follow the proceeds derived from such sale, and the estate would be bound to protect him."

Exceptions were taken, and upon petition for review it becomes necessary to determine whether or not the findings of the referee should be sustained. In the view I take of this case, it is unnecessary to pass upon the question of the right of McFarlin to a lien upon the property described in the deed.

The exceptions raise the question as to whether, in view of the sale in bulk of all this property, consisting, as aforesaid, of the real estate in some 19 separate towns, corncribs, elevator scales, coalhouses, etc., located in many of these towns, and numerous items of grain and other personal property, for the sum of $65,000, the claim by Mc-Farlin to a lien upon the real property at Ames can now be recognized and enforced against the fund of $65,000 received for all of said property. There was no appraisement of any individual piece of property, so far as appears, and the record in no manner indicates anything as to the value of the property at Ames upon which McFarlin claims a lien. McFarlin was present at the meeting when the order for sale was made. He, as trustee, signed the deed, and made the conveyance of all this property, free from all liens. No objections were made by him at any stage to the sale of said property, or the manner in which it was sold.

As found by the referee, McFarlin had a lien upon a specific parcel of property. This parcel, with some 18 other parcels, and the vast amount of personal property, were sold in bulk for a gross sum. A court of equity has broad powers, and will ignore forms and technical rules, in order that justice may be done; but no way is suggested, and I can conceive of no way, in which, under existing conditions, the McFarlin lien can be established against any portion of the proceeds of this sale. It has been repeatedly held that, where the holder of a lien upon property permits its sale in bulk, together with other property upon which he claims no lien, he is estopped from asserting a lien against any portion of the purchase price.

In re Gerry (D. C.) 112 Fed. 957, is in point. The estate of the bankrupt consisted of 12 pieces of realty, a large amount of machinery, and personal property of various kinds. The whole of said assets were sold in lump for $27,500. The sale was unanimously agreed to at a meeting of the creditors, of which claimant had notice, and to which he made no objection. Subsequently he asked that his claim, which constituted a lien upon two pieces of realty only, be paid out of the gross sum. His request was denied; the court using the following language:

"This sale was unanimously agreed to at a meeting of the creditors, of which meeting the claimant had notice; and as he did not object, either

then or afterwards, he actually or presumably assented to what was done. It seems clear to me, therefore, that even if, under ordinary circumstances, his lien would have been discharged by a referee's sale in case money enough was produced by the two lots to pay the lien, it is impossible, under the facts in hand, to determine that sufficient money was produced by the land that was bound for his claim. No apportionment of the price paid is possible. This condition having been brought about by the decision of the creditors, in which he took part, to sell the real and personal property for a lump sum, it is, I think, evident that his claim for payment out of this sum cannot be allowed."

In Re Klapholz (D. C.) 13 Fed. 1002, the claimant asserted a lien upon certain clothing sold by him to the bankrupt. The assets of the bankrupt, including said clothing, were sold in lump. In denying claimant's right to a preference out of the proceeds, the court used the following language:

"The fund was produced by the sale of all the bankrupt's personal property, including the clothing manufactured by the claimant, clothing manufactured by other persons, and various other articles; and there is no evidence concerning the price for which the suits in question were sold. The claimant had notice of the sale, which was made by the receiver under an order of court, and was afterwards duly confirmed without objection; and he should have asked the court to direct this clothing to be sold separately, in order that the fund thus produced might be earmarked, and the validity of his claim upon it be considered. The court had no knowledge that he was asserting a lien for the manufacture of these goods, and, as they had passed out of his possession into the custody of the receiver, it was his duty to make seasonable claim to priority of payment. Otherwise, he must be held to have taken the risk that the goods might be sold in such manner that the proceeds might be indistinguishably mingled with the proceeds of the other property of the bankrupt. In re Gerry (D. C.) 112 Fed. 957."

In Keyser v. Wessel, 128 Fed. 281, 62 C. C. A. 650, the court says:

"I agree with this conclusion, which accords with two previous decisions in this district. In re Gerry [D. C.] 7 Am. Bankr. Rep. 462, 112 Fed. 957; In re Klapholz [D. C.] 7 Am. Bankr. Rep. 703, 113 Fed. 1002. It is certain that no apportionment of the $3,500 can be made with any degree of accuracy; for, while it is true that only $1,000 was bid for the license separately, and therefore it may be contended with some degree of plausibility that the remaining $2,500 was bid for the stock and fixtures, it may also be contended, and with equal plausibility, that, as only $144.61 was bid for the stock and fixtures separately, the license must have produced the balance of the $3,500. Clearly the two lots as an entirety were more valuable than when offered separately; but the excess of value cannot now be assigned to its proper source or sources. Probably each lot contributed something to the higher price, but it would be a mere guess to attempt to say how much. If the landlord had desired to object to the sale upon the ground that he had not received notice, his time for so doing was, at latest, when the petition for confirmation was presented, for of this, at least, he had knowledge, and he was actually present when the order was made. His acquiescence in the report and confirmation was a clear ratification of the sale in bulk, and a waiver of the failure to give him notice. The action of the referee in rejecting the claim is approved."

In Re McFadgen (D. C.) 156 Fed. 715, it is said:

"If the landlords cannot claim priority out of the proceeds of the sale of the license, it becomes necessary for them to designate a particular fund out of which they claim priority. This they cannot do, for the reason that they permitted the trustee to sell the lease, license, stock, and fixtures together,

and thereby lost their claim to priority of payment out of the fund realized, because it could not be possible for them to claim priority out of any particular fund, when everything was sold in bulk. This point was decided in Keyser v. Wessel, 12 Am. Bankr. Rep. 126, 128 Fed. 281, 62 C. C. A. 650. No objection was made to the sale, nor is there any evidence how much the stock and fixtures brought separate from the license, or how much the lease brought separate from the whole. * * * Under the facts thus stated by the referee and by the court, it seems to me that discussion is unnecessary, in view of the decision by the Court of Appeals of this circuit in Keyser v. Wessel, 128 Fed. 281, 62 C. C. A. 650, 12 Am. Bankr. Rep. 126, from which I am unable to distinguish the present controversy. Upon the authority of that case, therefore, the ruling of the learned referee, declining to sustain the claim of the landlords to priority, must be affirmed."

In Vollmer v. McFadgen, 161 Fed. 914, 88 C. C. A. 605, the court says:

"The sale in gross of these different items was made and confirmed on notice to the landlord and without objection. * * * The gross price for which these items were sold constitutes such a commingling of the three items as brings the case within the ruling in Keyser v. Wessel, 12 Am. Bankr. Rep. 126, 128 Fed. 281, 62 C. C. A. 650, where on a commingling of like items this court held it was impossible 'to determine the proportional value of the particular part bound by the liens to the gross purchase price.' "

See, also, In re Torchia (D. C.) 185 Fed. 578; In re Grainger, 160 Fed. 69, 87 C. C. A. 225.

Counsel for claimant rely upon In re Goldsmith (D. C.) 168 Fed. 779, McKay v. Hamill, 185 Fed. 11, 107 C. C. A. 115, and In re Dunn & Co. (D. C.) 193 Fed. 212. None of these cases are in point. In the first case claimant had a chattel mortgage upon specific articles of personal property which were sold, not in bulk, at a sale with other articles of property, and the difficulty arose because the accounts kept of the sale did not specify the property for which the different amounts were received, and the question involved was whether the evidence was sufficient to properly point out the amounts received for the articles upon which the mortgage lien existed. McKay v. Hamill simply involved a question as to whether or not a sale was free from a lien of a trust deed, and, if so, whether the proceeds of the property was subject to the lien. There was no question as to the identity of the proceeds. In re Dunn & Co. involved claims for priority, based upon rights accruing prior to the time the property passed into the hands of the trustee, and did not involve any question presented in this case.

These cases, however, show how far a court of equity will go in an effort to see that justice and right shall prevail; but they in no manner indicate a plan or principle upon which the lien of the claimant in this case could be established against any portion of the money received for the sale. If there were but two or three separate pieces of property involved, it might be possible to in some manner arrive at the proximate amount which was derived from any one of them; but in this case the bankrupt was an elevator company, having property and doing business in some 19 different towns and cities. Some places it owned the real estate upon which its buildings were located, and did not own the buildings; some places it owned the buildings, and

not the ground. There were elevators, corncribs, coalhouses, wagon scales, dwelling house, chicken house, feedhouse, oilhouse, barn, and numerous other structures, all, together with the real estate, included in the sale. In addition thereto, there were thousands of bushels of wheat, and corn, and oats, and other grain—all sold in bulk for the gross sum of $65,000.

The claimant only asks a lien upon the real estate separate from the buildings at Ames, and how it would be possible to "unscramble" this transaction, so as to even approximate the real interest which McFarlin, under the decision of the referee, had in the property at Ames, is beyond my comprehension. So that, aside from the question of waiver and estoppel based upon the knowledge and acts of McFarlin, it seems to be impossible to grant him any relief.

The decision of the referee is reversed, for the reasons above indicated, and the cause is remanded to him for further proceedings consistent with this opinion.