GEORGE F. PERKINS AND OTHERS, PLAINTIFFS, v. DAVID O. BATTERSON, AS RECEIVER OF THE WHITEMAN PULP AND PAPER COMPANY, DEFENDANT.

*Chattel mortgage by a manufacturing corporation on raw material to be subsequently purchased and goods to be subsequently manufactured — a mortgagee who has taken possession under the terms of the mortgage is entitled to recover from a receiver the proceeds of sale of the goods.*

A chattel mortgage, given by a manufacturing corporation upon all the goods of a designated kind manufactured, and in process of manufacture, at its mills, and upon all of such goods thereafter to be manufactured, or in process of manufacture, and upon all the raw material on hand, or thereafter to be on hand, as security for an actually existing indebtedness, in excess of the total value of the property then or thereafter covered thereby, although not upheld as a mortgage, and as to third parties whose rights may have intervened as to after-acquired property, may, in the absence of fraud, be construed between the parties thereto as a contract to give a lien upon the raw material thereafter purchased, and upon the goods made therefrom, which should take effect as soon as property of either kind came into the ownership of the mortgagor.

Aside from such lien, the mortgagee in such a chattel mortgage, containing a provision that in case of default he may enter the premises and take and sell the mortgaged property, and out of the proceeds pay himself the amount due, who has entered the premises of the mortgagor and notified its superintendent that he took possession of the articles designated therein under his mortgage, and has placed a keeper in charge, who is ejected by the company, is entitled, by force

of the contract created by such provision of the mortgage, to the fund arising from a sale of such articles thereafter made by a receiver, appointed in an action thereafter brought by the president of the corporation against the company, as sole defendant, for its dissolution, although part of the raw material which entered into the goods so sold had been purchased by the corporation and stored upon its premises after the execution and filing of the chattel mortgage.

In such a case, the mortgagee having taken possession of the goods under the contract to that effect in the mortgage, and being entitled to sell the same for payment of his debt before any steps had been taken for the appointment of a receiver, the question is not one of lien but of title to property actually vested in the mortgagee, which was not diverted by the appointment of the receiver.

SUBMISSION of a controversy without action, under section 1279 of the Code of Civil Procedure.

*C. D. Ridgway*, for the plaintiff.

*J. S. Hunn*, for the defendant.

DWIGHT, P. J.:

The plaintiffs are chattel mortgagees, and the defendant is the receiver of the "Whiteman Pulp and Paper Company," a domestic corporation, lately doing business at Dansville, in Livingston county; and the controversy relates to a fund in the hands of the defendant, arising from the sale by him, under an order of the court, of a quantity of pulp made by the company, and which was in the mill at the time the defendant took possession. The plaintiffs claim the fund by virtue of their chattel mortgage, upon the following facts:

On the 13th of October, 1891, the company was indebted to the plaintiffs in the sum of $18,500, for borrowed money, used in its business, and on that day gave to the plaintiffs its chattel mortgage to secure the payment of that sum, on demand, as well as any further advances to be made, not exceeding $25,000 in all. The mortgage, by its terms, covered all the straw pulp manufactured and in process of manufacture at the company's mills, and all the unmanufactured straw on hand · and also all the straw pulp thereafter to be manufactured, or in process of manufacture, at said mills, and all the unmanufactured straw thereafter to be on hand.

The mortgage provided that, in case of default, the plaintiffs might enter the premises and take and sell the mortgaged property, and out of the proceeds pay themselves the amount due, etc.

On the 19th day of January, 1892, the indebtedness of the company to the plaintiffs had been increased, by advances made subsequent to the date of the mortgage, to the sum of $22,000 and upwards, all of which was due on demand. On that day the plaintiffs made demand of payment, which was refused, and they thereupon, by virtue of their chattel mortgage, took possession of all the mortgaged property outside of the mill. They also, on the same day, went into the mill, and made an inventory of the pulp manufactured and in process of manufacture therein, and gave notice to the superintendent and the secretary of the company that they took possession of it under their mortgage. On the next day, January twentieth, they again entered the mill, and put a keeper in charge of the pulp manufactured and in the process of manufacture, and again notified the superintendent that they took possession of the pulp under the mortgage. The superintendent denied their right to take the property, and ordered them to quit the premises. They refused to do so, and retained their keeper in charge of the pulp until, in the afternoon of that day, he was forcibly removed from such charge, and from the premises, by the officers and servants of the company.

On the same day that the plaintiffs took possession of the pulp (January twentieth), Alonzo J. Whiteman, president of the company, verified the complaint in an action to be brought by himself as plaintiff, against the company as sole defendant, alleging its insolvency and praying for its dissolution; and on the next day (January twenty-first) he made application to the Supreme Court, at Special Term, on that complaint and his affidavit, for the appointment of a receiver. On his application, the company itself, and certain creditors, other than the plaintiffs in this action, were represented, and on their consent the order was made appointing the defendant herein such receiver. He took possession of the pulp in question after the plaintiff's keeper had been forcibly ejected from the mill. The plaintiffs thereupon gave him notice that they had taken possession of the pulp under their mortgage, and procured an order for the receiver to show cause, at the next Special Term of the court, why he should not deliver the pulp to them. On the return of the order to show cause, the court made an order by which

the receiver was directed to sell all the pulp manufactured, and in process of manufacture in said mill, and hold the proceeds of such sale separate from all other moneys coming into his hands as such receiver, subject to the further order of the court.

Pursuant to that order the receiver sold the pulp, realized as the net proceeds thereof the sum of $2,393.42, which he holds subject to the order of the court, and this submission was agreed upon to obtain an adjudication by the court of the question of the title to the property, and, therefore, to the fund.

In addition to the facts above stated, the following are among those agreed upon for the purposes of the submission: " That a small portion of the straw, out of which the pulp covered by said order was made, was straw purchased by the said company, and stored by it upon its premises after the execution and filing of said chattel mortgage, and was paid for by the said company in its regular course of business; that the amount of said straw was about one-sixth of the amount of straw used in the manufacture of the said pulp; that the remainder of the straw used was straw which was covered by the chattel mortgage."

" That the value of said pulp, as manufactured, was represented by about one-third straw, and the remainder by chemicals and labor sold and furnished to said company after the execution and filing of said chattel mortgage, and which have not been paid for, and there are now no funds in the receiver's hands applicable to payment of said chemicals or labor. That said pulp, as manufactured, was composed of the straw used, none of the said chemicals used remaining as constituent parts thereof."

Upon the foregoing statement we can have no doubt that the plaintiff's contention must prevail to the full extent. Though the mortgage, as such, and as to third persons whose rights might have intervened, could not be upheld as to that portion of the pulp, which was, in any sense, " after acquired property" (*Coats* v. *Donnell*, 94 N. Y., 177), yet, as between the parties to the mortgage, that instrument was to be construed as a contract to give a lien upon straw to be thereafter purchased, and upon the pulp to be made therefrom, which took effect as soon as the property of either kind came into the ownership of the mortgagor (*Kribbs* v. *Alford*, 120 N. Y., 519; *Deeley* v. *Dwight*, 132 id., 59.) This contract was

without suggestion of fraud, and was given as security for an actually existing indebtedness to an amount greatly in excess of the total value of the property then or thereafter to be covered thereby.

But it is not by virtue of the lien merely, created or to take effect under the provisions of the contract, that the plaintiff's claim the fund in question. The contract, besides its provisions for a lien, gave to the plaintiffs the right to take possession of all the pulp, manufactured or in process of manufacture, at any time in possession of the debtor company, for the purpose of applying it to the payment of the debt; and this they did, in all respects, in accordance with the contract before any rights of the defendant had intervened. They were in possession of the pulp under their contract, and entitled to sell it for the payment of their debt before any steps even were taken for the appointment of a receiver. It was no longer, therefore, a question of lien, but of title to property actually vested in the plaintiffs; and there was nothing in the appointment of the receiver which could operate to divest that title. By his appointment he became vested with title only to such property as was then in the company, and he took no interest in or control over the property which had been actually reduced to possession by the plaintiffs under their unquestioned contract with their debtor. The wrongful act of the latter in forcibly ejecting the custodian of the plaintiffs from the mill could have no effect to divest them of their absolute title which they had acquired by taking possession under their contract.

We are clearly of the opinion that the plaintiffs are entitled, under the submission, to judgment for the whole of the fund arising from the sale of the pulp.

Macomber and Lewis, JJ., concurred.

Judgment ordered for the plaintiffs, on the submission, for the fund in question.