## In re ROSEBOOM.

(District Court, N. D. New York. September 3, 1918.)

1. BANKRUPTCY ⟨⟩184(3)—LIENS—CHATTEL MORTGAGE.

A chattel mortgage for purchase money on the stock in a retail store contemplated that the mortgagor should continue the business, goods sold to be replaced by others which it was provided should be subject to the mortgage. The mortgagor afterward sold the store to bankrupt, who assumed payment of the mortgage with full knowledge of its terms. *Held*, that the mortgage created an equitable lien on goods substituted by the mortgagor and sold to bankrupt, good as against the mortgagor and as against bankrupt and his creditors as to such goods as were removed by the mortgagee before the bankruptcy.

2. BANKRUPTCY ⟨⟩151—TITLE OF TRUSTEE—LIENS.

In the absence of fraud, a trustee takes the property in the same plight and condition, and subject to the same liens and equities, as when the bankrupt held it.

In Bankruptcy. In the matter of George W. Roseboom, bankrupt. Application by receiver for an order requiring delivery to him of certain personal property by G. G. McNamara. Referred.

This is a proceeding in the nature of an application by the receiver appointed by this court in bankruptcy for the delivery to him by G. G. McNamara of certain personal property which he claims belongs to the bankrupt estate, and which McNamara claims he is entitled to hold under and by virtue of a chattel mortgage thereon executed and delivered to him by one Willard Teetsel, and an equitable lien created thereby, who was then the owner of certain of the property, and who became the owner of other of the property thereafter, and who subsequently sold this property, with other personal property he had purchased, to George W. Roseboom, the bankrupt, subject to such mortgage, and

which mortgage Roseboom assumed and agreed to pay. As to certain personal property it is, in effect, an application by said McNamara for the delivery to him of such property as is not now in his possession under the said mortgage.

Alexander Neish, of Walton, N. Y., for McNamara.
Vere H. Multer, of Binghamton, N. Y., for receiver.
R. F. Bieber, of Binghamton, N. Y., for Roseboom.

RAY, District Judge (after stating the facts as above). [1] April 29, 1916, one Willard Teetsel, of Walton, N. Y., was justly indebted to one Galusha G. McNamara in the sum of $3,199.40, the purchase price of certain goods and chattels described in the mortgage hereafter referred to, and on which day McNamara sold Teetsel the said personal property, consisting of goods and fixtures in a store, a horse and delivery wagon, a harness, and a pair of sleighs. The schedule of mortgaged property included the following:

"Together with any and all other property that may be substituted for the above-named property, and at any and all times hereafter, in said store, precisely the same as if the property there in the store at any time hereafter was specifically mentioned and described herein, and it is treated and regarded the goods subsequently hereto placed in the store as a substitute for the goods now therein are to be treated the same as if specifically described herein, first party to keep the goods insured for three thousand dollars, as interest of parties appear."

The interest and $500 of the principal was to be paid annually. If default was made and continued for 60 days, then the entire sum, at McNamara's election, was to become due. The mortgage contained a power on default to take and sell the property to satisfy the debt, or any balance, and also a clause authorizing McNamara to take the property if at any time he deemed himself unsafe. The mortgage in form sold and transferred the property to McNamara, but it was a security for such indebtedness. This mortgage was kept good by filing and refiling under the chattel mortgage law of the state of New York. This was a retail store, and Teetsel took possession and continued the business, selling from and replenishing the stock in the usual manner customary in such stores and in such a business, and as contemplated by the mortgage.

June 9, 1917, Teetsel, by written bill of sale, sold the business and all the property in the store, and the other property, to the now bankrupt, George W. Roseboom, who agreed to pay therefor $7,073. This bill of sale contained the following:

"And whereas, there is a mortgage upon said property now held by Galusha G. McNamara upon which there is unpaid twenty-six hundred ninety-nine dollars and forty cents, with interest thereon from April 29th, 1917, which amount has been deducted from the aforesaid purchase price, and the second party hereby covenants and agrees to pay the same as a part of the purchase price according to the terms of said mortgage, which is $500 of principal and interest annually with right to pay faster if the mortgagee so desires. And I further covenant that the goods are free and clear from all liens or incumbrances except as aforesaid and that the title is perfect in me and I have good right and full power to sell the same."

Roseboom took possession and continued the business, selling and replacing to some extent, but made default in his payments. Teetsel

had and has no creditors. Roseboom has creditors and is a bankrupt. Roseboom had full knowledge of the mortgage and of its terms and conditions.

Some days before the filing of the petition in bankruptcy McNamara, deeming himself insecure and unsafe, with the consent of Roseboom, took possession of and took away from the store a large quantity of this mortgaged property, as much as he deemed necessary to satisfy the balance due on his mortgage, which was about $2,600 or $2,700. Roseboom claimed he was solvent, and an attempt was made to effect an arrangement by which the property should be returned to the store, and some of it was returned; but it almost immediately developed that Roseboom had, at least, largely underestimated his indebtedness, and in fact had largely misrepresented it. Thereupon the attempted arrangement was repudiated by McNamara, as he had the right to do, and he repossessed himself of some, and perhaps most, of the property so taken by him.

Then, in June, 1918, a petition in bankruptcy was filed, and application to this court made for the appointment of a receiver. The facts not fully or properly appearing, this court not only appointed a receiver, but directed McNamara to return to the receiver the property so taken by him on his mortgage, which he did. The receiver was authorized to continue the business. Further facts having been brought to the attention of this court, an order was made enjoining further action by such receiver, and requiring the said receiver and bankrupt to show cause why the property actually taken by the mortgagee prior to the filing of such petition in bankruptcy should not be returned to him for disposition under the mortgage and lien of McNamara.

It is clear from the terms of the mortgage given by Teetsel to McNamara, and later assumed by Roseboom, with full knowledge of all its terms, that it was contemplated Teetsel should sell goods in the usual course of business, and purchase other goods and replace those so sold, and that the lien of such mortgage should attach to such goods so subsequently acquired by Teetsel for replacement. This mortgage and lien was perfectly good as between the parties, and, while Teetsel could not mortgage goods he did not then own, the agreement was good in equity, and created an equitable lien on the subsequently acquired property, good as against Teetsel and Roseboom when the latter purchased the property and assumed the mortgage. Even if void as to the creditors of Teetsel, he had none. The lien was not void as to Roseboom or his creditors. Roseboom was not and is not an innocent purchaser in good faith and for value. He knowingly took the property subject to the lien, and the equitable lien of McNamara was perfected by actual possession taken by him prior to the bankruptcy proceedings. There was no fraud in the transaction. Plainly and unquestionably this was an agreement between Teetsel and McNamara, and later an understanding between Roseboom and McNamara that goods sold should be replaced, and that McNamara should have a lien on all the goods for the balance of his mortgage debt.

This was not valid so as to bind property purchased by Roseboom after he took possession, as against his creditors (Kribbs v. Alford, 120 N. Y. 519, 525, 24 N. E. 811), but was valid to bind, as against Roseboom and his creditors, the property actually owned by Teetsel when he gave the mortgage, and create a lien on that which Teetsel subsequently purchased and put in the store in replacement of those sold by him, so far as reduced to the possession of the mortgagee prior to the bankruptcy. Kribbs v. Alford, supra; McCaffrey v. Woodin, 65 N. Y. 459, 22 Am. Rep. 644; Wisner v. Ocumpaugh, 71 N. Y. 113; Coats v. Donnell, 94 N. Y. 168–177; Titusville Iron Co. v. The City of New York, 207 N. Y. 203, 100 N. E. 806. In this last case it is held:

"Mortgages or contracts pledging subsequently acquired property, though void at law, will nevertheless be enforced in equity as between mortgagor and mortgagee as agreements to give liens, and also as against purchasers with notice. But it is settled law in this state [N. Y.] that they will not be enforced as against creditors."

The bankruptcy court is a court of equity, and proceeds on equitable principles.

[2] The trustee of a bankrupt, in the absence of fraud, takes the property in the same plight and condition, and subject to the same liens and equities, as when the bankrupt held it. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Zartman as Trustee v. First National Bank, etc., 216 U. S. 134, 138, 30 Sup. Ct. 368, 369 (54 L. Ed. 418), where the court said:

"The trustee claims that he takes the same kind of title as a bona fide purchaser for value, but the rule applicable to this and all similar cases is that the trustee takes the property of the bankrupt not as an innocent purchaser, but as the debtor had it at the time of the petition, subject to all valid claims, liens, and equities. * * * The trustee took the bankrupt's property in the same condition, and subject to the same liens, as the bankrupt himself held it. The trustee is in no sense a bona fide purchaser for value and entitled to protection as such."

In the instant case the lien was more than four months old. The mortgagee had reduced certain of the property to his actual possession, with the assent of Roseboom, before the bankruptcy, and, unless this equitable lien created by the mortgage was and is void as to the creditors of Roseboom, McNamara can and should hold it, excepting of course such property as Roseboom purchased and put in the store after he purchased of Teetsel.

In Sexton, Trustee in Bankruptcy, v. Kessler & Co., 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995, certain securities were set apart by a New York house in its own vaults as security to an English house for drafts thereon. The New York house retained and exercised the power, from time to time, to change the securities, and even withdraw some of those remaining if the securities had increased sufficiently in value to keep the security good. The English house had knowledge of all this. Some little time prior to the bankruptcy of the New York house the securities were taken into possession by the English house. It was held that it had the right so to do and

hold same and the proceeds as against the trustee in bankruptcy.
The court said:

"When the English firm took the securities it only exercised a right that had
been created long before the bankruptcy and in good faith. Such we under-
stand to be the law of New York, and, in the absence of any controlling statute
to the contrary, such we understand to be what the law should be."

In the instant ·case the agreement was not that the mortgagor
should deal with the property as his own, but, by fair construction,
that when he sold he should replace that sold and keep the security
good.  There is a long line of cases holding that where ·the agree-·
ment is that the mortgagor is to or may sell and dispose of the prop-
·erty as his own and use the proceeds as his own, or replace or not
as he pleases, the transaction is fraudulent as to creditors of the mort-
gagor on its face.  But in Skilton v. Codington, 185 N. Y. 80, 77 N.
E. 790, 113 Am. St. Rep. 885, this subject is quite fully discussed,
and it is pointed out in deciding the case that there was an express
agreement that the mortgagor might sell, "and apply the proceeds
to the payment of the debt, 'excepting such portion thereof as is nec-
essary for the expenses of the business, or as he * * * (the
mortgagor) may need to replenish or increase the said stock of
goods.'"  The mortgage was held void as to the creditors of the
mortgagor for the reason that "the mortgage does not require all
the proceeds of the mortgaged chattels to be applied either on the
mortgage debt or to the acquisition of new property, but only the
surplus, after deducting the expenses of carrying on the business."
In the instant case we have no such agreement, express or implied.
There is no presumption of an illegal agreement or understanding.
In 1 Jones on Liens (Ed. 1914) § 36, it is said:

"*Lien on Changing Stock of Goods.*—An equitable lien may be imposed upon
a changing stock of goods by agreement of the parties, * * * and such
lien may be enforced as against the general assignee of the firm for the benefit
of their creditors.  The fact that it was agreed that the owners of the stock
of goods should keep it replenished up to its value at that time, and the further
fact that, without knowledge or consent of the obligors (in the security), the
owners disposed of parts of the stock and put in other stock to supply its place,
do not affect the lien, but this will attach to the mingled goods in the condition
they are in at the time the lien is enforced."  Citing Arnold v. Morris, 7 Daly
(N. Y.) 498.

And in section 42 the same author says:

"*Equitable Lien on Future Property.*—There may be an equitable lien on
future property.  Whenever a positive lien or charge is intended to be created
upon real or personal property not in existence, or not owned by the person
who grants the lien, the contract attaches in equity as a lien or charge upon
the particular property as soon as he acquires title and possession of the same."
Citing Wismer v. Ocumpaugh, 71 N. Y. 113; Barnard v. Norwich, etc., 4 Cliff.
351, Fed. Cas. No. 1007; Coates v. Donnell, 48 N. Y. Super. Ct. 46.

In Griffin and Curtis on Chattel Mortgages (2d Ed., 1916) 27, 28,
and 29, it is said:

"But a mortgagor may agree to mortgage property not then owned [by him],
or to give a lien upon it as soon as he gets it, and equity will enforce the
agreement and establish the lien. * * *

"(c) *After-Acquired Property.*—A mortgage of property to be subsequently acquired is not effective in passing the title of such property to the mortgagee. Such a mortgage may, however, be construed as an agreement to give a mortgage on such property when acquired and may thus operate as an equitable lien thereon. At law the mortgagee has no title to the property, but has a license to seize the property when it is acquired by the mortgagor. Upon such seizure title passes to the mortgagee." Citing McCaffrey v. Woodin, 65 N. Y. 459, 22 Am. Rep. 644; Perkins v. Batterson, 66 Hun, 583, 21 N. Y. Supp. 815; Kennedy v. National Union Bank of Watertown, 23 Hun, 494.

Also:

"A mortgage upon a retail stock of goods, which purports to cover goods to be purchased in the future, is effective only as an equitable lien." Citing Ludwig v. Kipp, 20 Hun, 265; Stewart v. Fidelity, etc., 19 Misc. Rep. 49, 42 N. Y. Supp. 705; Levy v. Welsh, 2 Edw. Ch. (N. Y.) 438.

Also:

"But such a mortgage, if otherwise valid, is not void because it professes to cover after-acquired property; it may be good as to the previously acquired property." Gardner v. McEwen, 19 N. Y. 123; Yates v. Olmstead, 52 N. Y. 632; Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885.

From the foregoing we deduce the following:

1. This mortgage was given for a full and fair consideration by Teetsel to McNamara.

2. There was no agreement, express or implied, that the mortgagee might sell and dispose of the property and dispose of it or the proceeds as his own property.

3. It was and is good, as between mortgagor and mortgagee, as a valid chattel mortgage on all property then owned by Teetsel, as it was duly filed and renewed.

4. The mortgage or instrument may be and is construed as an agreement to give a lien, and as one creating an equitable lien on all the property subsequently acquired by Teetsel, the mortgagor, and turned over to Roseboom, his vendee.

5. Roseboom not only knew of the mortgage and lien, but assumed, agreed to pay, same when he purchased.

6. This mortgage and lien were good and valid as against Teetsel, and Roseboom, his vendee; and to all goods in the store transferred to Roseboom, and on hand when McNamara took possession, he (McNamara) acquired legal title by virtue of the mortgage and equitable lien at that time.

7. McNamara acquired possession and title to most of the property prior to the bankruptcy of Roseboom with Roseboom's knowledge and consent.

8. The right and title of McNamara to such property was and is superior to the rights of the creditors of Roseboom and this receiver and that of the trustee when one shall be appointed.

9. McNamara cannot hold any of the property purchased by Roseboom and put in the store after he purchased of Teetsel.

However, the receiver alleges in his answer that he can prove (1) that there was an oral agreement between Teetsel, the mortgagor, and McNamara, the mortgagee, at the time of the execution of the mortgagee, by which Teetsel was to retain the property, and sell

and dispose of same as his own, and use the proceeds, or such part as he saw fit, as his own, and that this made the mortgage and lien void as to the creditors of Teetsel, and also as to the creditors of Roseboom, his vendee; and (2) that after Roseboom became the owner there was an oral agreement entered into between him and McNamara that Roseboom should or might retain the possession of the mortgaged property, and sell and dispose of same as his own, and use the proceeds, or such part thereof as he saw fit, as his own, and that this agreement made the mortgage and lien void as to the creditors of Roseboom. The effect of such oral agreements, or either of them, if made, I will not now pass upon. If no such agreements were made, it will not be necessary to pass on the questions of law. The matter will be referred to Hon. A. H. Sewell as special master to take evidence whether or not such agreements, or either of them, were made, and report the evidence to this court, with his findings of fact and conclusions of law.

The claimant, McNamara, will be permitted to select and set apart the property which he can identify, or claims to identify, as property owned by Teetsel when he executed the mortgage, and also that which Teetsel purchased and put on the premises by way of replacement and taken into possession prior to the filing of the petition in bankruptcy; also that answering to such description not taken into actual possession prior to the filing of such petition. If there is a dispute as to identity, the special master will take evidence and determine and report the facts and his conclusions of law. Until title is determined on the coming in of the report of the special master, McNamara and the receiver and trustee, when appointed, will be enjoined and restrained from disposing of any of such property.